

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-16-00636-CV

Kevin W. **LILES**, Bryan K. Harris, Stuart R. White, James L. Ray, and Kyle D. Giacco,
Appellants/Cross-Appellees

v.

Maria Isabel Serna **CONTRERAS**, as Next Friend and Guardian of Samara Isabella Morales
Serna and Samantha Isabel Morales Serna, Minor Children,
Appellee/Cross-Appellants

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2014CVT001295 D3
Honorable Rebecca Ramirez Palomo, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed:  March 21, 2018

AFFIRMED

This is an appeal challenging a trial court's order imposing sanctions on several attorneys

for actions and omissions relating to the execution of a settlement agreement, and a cross appeal

challenging the trial court's refusal to permit review of documents submitted for *in camera*

examination.   We affirm the trial court's sanctions order, but reject as moot the complaint

regarding *in camera* inspection.

**BACKGROUND**

Samuel Morales Castillo was killed when an FE Express, LLC truck driven by Francisco Javier Bernal struck a vehicle, which then struck Castillo as he stood next to his vehicle on the side of the road. Castillo's girlfriend, Maria Isabel Serna Contreras, as next friend and guardian of Samara Isabella Morales Serna and Samantha Isabel Morales Serna, Minor Children (collectively "Contreras"), filed a wrongful death action against FE Express and Bernal. Contreras was represented by attorney Ronald Rodriguez of the Law Offices of Ronald Rodriguez, P.C., a Laredo firm. This suit was assigned to the 341st District Court, Webb County, Texas. Castillo's wife, Paulina Navarro Hernandez, individually and on behalf of her two minor children (collectively "Navarro"), also filed a wrongful death action against FE Express and Bernal. Navarro was represented by the Corpus Christi firm of Liles Harris, PLLC — specifically attorneys Kevin W. Liles, Brian K. Harris, and Stuart R. White (collectively "Liles"). The lawsuit filed by Liles on behalf of Navarro was assigned to the 111th District Court, Webb County, Texas. Thereafter, FE Express and Bernal, who were represented by James L. Ray and Kyle D. Giacco (collectively "R&G") of Daw & Ray, L.L.P., a Houston law firm, filed a motion to consolidate the two suits. The trial court granted the order, ordering Navarro's suit consolidated into Contreras's suit in the 341st District Court. It is undisputed that attorneys for both Navarro and Contreras sent demands to counsel for FE Express and Bernal, seeking the full limits of FE Express's $1 million per accident insurance policy. In January 2015, FE Express's insurer, who was willing to settle for policy limits, proposed mediation or arbitration to apportion the insurance proceeds between Navarro and Contreras. It does not appear any formal mediation or arbitration proceedings occurred.

On September 11, 2015, approximately nine months after the motion to consolidate was granted and while the wrongful death suits were still pending in Webb County, Liles, on behalf of

Navarro, filed a wrongful death suit in Nueces County asserting the identical factual and legal allegations contained in the Webb County petition. [1] Liles served R&G with a copy of the petition, but did not notify counsel for Contreras of the new suit. In the Nueces County petition, Liles asserted venue was proper in Nueces County "under the general venue rule." Three days later, Liles, who represented that a settlement had been reached, asked the Nueces County trial court to appoint a guardian ad litem to protect the interest of the Navarro minor children. The trial court granted the motion and rendered an order appointing an ad litem. Thereafter, Liles served R&G — but not Contreras's attorney — with a notice stating that "a Friendly Suit Hearing" had been set for October 1, 2015 in the Nueces County court, indicating a settlement had been reached between Navarro and FE Express and Bernal. Two amended hearing notices were filed September 24, 2015 and September 30, 2015 — these too were served on R&G, but not on counsel for Contreras. The final notice set the friendly suit hearing for on October 12, 2015.

On October 6, 2015, several events took place. First, R&G, as stated in their appellate brief, "agreed to waive service" and filed an answer on behalf of their clients, FE Express and Bernal, to Navarro's Nueces County suit. The answer was a Rule 92 general denial; R&G did not contest Liles's venue allegation. *See* TEX. R. CIV. P. 92. Second, approximately two hours after R&G filed the answer in the Nueces County suit, Liles filed a notice of nonsuit in Webb County, dismissing Navarro's claims against FE Express and Bernal without prejudice. There was no mention of the settlement or the friendly suit setting in the notice of nonsuit. Finally, R&G served Navarro and Contreras with FE Express and Bernal's "First Amended Responses to All Plaintiffs' Request for Disclosure." In the amended response, FE Express and Bernal amended twelve responses — (a) through (l) — to the requests for disclosure. Included in the amendment, was the

---

[1] There was nothing in the Nueces County petition to indicate that the suit was merely a "friendly suit," nor was there any mention of the wrongful death action still pending in the 341st District Court in Webb County.

response to request (h), which sought disclosure of "[a]ny settlement agreements described in Rule 192.3(g)." FE Express and Bernal amended their original responses to advise they had reached a settlement agreement with Navarro in the amount of $700,000.00. The response noted the settlement had not been finalized and the settlement documents were being prepared for court approval. Accordingly, no actual settlement agreement was produced. The responses did not include any information about the Nueces County suit or the hearing set for October 12, 2015. The amended responses were served the day before the scheduled deposition of Paulina Navarro Hernandez.

The next day, October 7, 2015, Contreras took Navarro's deposition. There was no mention during the deposition of the settlement or the hearing pending in Nueces County. Contreras's attorney stated at the sanctions hearing that he received the amended responses to the request for disclosure regarding the settlement "late in the day" on October 6th as he was preparing for the deposition. As to the settlement, he "figured we would come back to *this Court* later and deal with that." (emphasis added)

The hearing on the Nueces County friendly suit was held on October 12, 2015, as set out in the final amended notice of hearing. At the hearing, there was no specific mention of the Webb County suit — or the fact that there were additional minors involved. The only hint of additional claimants arose when R&G asked Navarro if she understood there were "other claimants against our clients that are also seeking part of the proceeds of the insurance policy." Navarro replied that she was aware there were other claimants, but did not mention the other minors. When questioned by her own attorney, Navarro admitted a settlement agreement and release existed and she had met with Liles the night before the friendly suit hearing "and discussed and read the entire agreement." Thus, the record establishes the written settlement agreement existed as of October 11, 2015. However, no copy of the agreement was produced to Contreras until February 1, 2016, when her

attorney specifically requested it. On the same date the hearing was held, the Nueces County trial court approved the settlement and signed an "Agreed Final Judgment" between Navarro and defendants FE Express and Bernal.

After Contreras received a copy of the actual settlement agreement, her attorney filed a motion for sanctions on her behalf. In the motion, Contreras alleged the Webb County trial court should impose sanctions: (1) under Chapter 10 of the Civil Practice and Remedies Code because Liles filed the October 6, 2015 notice of nonsuit for an improper purpose; (2) under Rule 215.3 because Liles and R&G abused the discovery process by failing to timely produce a copy of the actual settlement agreement; and (3) under its inherent power to impose sanctions because Liles and R&G engaged in abusive conduct that affected the court's core functions and attacked the integrity of the judicial system.[2] As a consequence for this sanctionable conduct, Contreras requested the trial court to order the following relief: (1) order the settling parties and their attorneys deposit the $700,000.00 settlement funds into the court registry; (2) strike Navarro's pleadings and render judgment that she and her children take nothing; (3) order Navarro's three attorneys to each pay Contreras $250,000.00; (4) strike FE Express and Bernal's answer and render a default judgment in the amount of $10 million in favor of Contreras; and (5) order the attorneys for FE Express and Bernal to each pay Contreras $250,000.00.

In response to the motion for sanctions filed on behalf of Contreras, Liles filed a motion for sanctions on behalf of his client. In this counter motion for sanctions, Navarro alleged the motion for sanctions filed by Contreras violated Rule 13 of the Texas Rules of Civil Procedure, which precludes the filing of pleadings that are groundless and brought in bad faith or groundless and brought to harass, and Chapter Ten of the Texas Civil Practice and Remedies Code, which

---

[2] In the motion, Navarro sought sanctions against Contreras and FE Express and Bernal, as well as their attorneys. However, the trial court imposed sanctions only upon the attorneys, Liles and R&G.

precludes the filing of any pleading that is presented for an improper purpose. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001(1), 10.004(a) (West 2017); TEX. R. CIV. P. 13.

The trial court held a hearing on the motions for sanctions. The hearing took place on different days over the course of several months. Prior to making a determination, the trial court ordered Liles and R&G to submit certain documents for *in camera* review. The trial court reviewed the documents, but denied Contreras's request for access to them. Ultimately, the trial court granted Contreras's motion for sanctions, finding that:

- Liles filed a notice of nonsuit for an improper purpose in violation of Chapter 10;

- R&G abused the discovery process by failing to respond fully to Contreras's request for disclosure by not producing the settlement agreement as required by the discovery rules; and

- Liles and R&G conspired to intentionally and unethically avoid and interfere with the court's jurisdiction, sabotaged Contreras's ability to object to the settlement agreement, and undermined the trial court's duty to protect the Contreras minors' best interests, resulting in a direct attack on the judiciary and legal system.

However, the trial court did not adopt the relief requested by Contreras. Rather, the trial court ordered Navarro's attorneys to pay, jointly and severally:

- a monetary penalty of $50,000.00 into the court registry;

- all court costs incurred in representing the Navarro plaintiffs;

- one-half of all court costs related to the motion for sanctions;

- attorney's fees and expenses to the Contreras's attorney in the amount of $37,744.00 with post-judgment interest; and

- $10,000.00 into the court registry if an appeal is filed to be held as attorneys' fees and expenses in the event of an unsuccessful appeal.

The trial court also ordered the Navarro attorneys to complete three hours of legal ethics education within six months of the order. As for R&G, the trial court ordered them to pay, jointly and severally:

- a monetary penalty of $25,000.00 into the court registry;

- one-half of all court costs related to the motion for sanctions;

- attorney's fees and expenses to the Contreras's attorney in the amount of $12,180.00 with post-judgment interest; and

- $10,000.00 into the court registry if an appeal is filed to be held as attorneys' fees and expenses in the event of an unsuccessful appeal.

The trial court also ordered R&G to complete three hours of ethics education within six months of the order. The trial court denied Navarro's counter motion for sanctions. After the trial court signed an order of severance, all parties, including Contreras, filed notices of appeal.

## ANALYSIS

On appeal, Liles and R&G challenge the imposition of sanctions. Contreras challenges the trial court's refusal to allow her to inspect the documents that were submitted to the trial court by Liles and R&G for *in camera* inspection.

### *Sanctions*

On appeal, Liles and R&G, who filed separate briefs, contend the trial court erred in imposing sanctions against them. Liles also contends the trial court erred in denying Navarro's motion for sanctions against Contreras's attorney.

### *Standard of Review*

Appellate courts review a trial court's imposition of sanctions under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014) (sanctions under Chapter 10 of the Civil Practice & Remedies Code); *Low v. Henry*, 221 S.W.3d 309, 614 (Tex.

2007) (sanctions under Rule 13 of the Texas Rules of Civil Procedure); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004) (sanctions under Rule 215 of the Texas Rules of Civil Procedure); *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (sanctions under trial court's inherent power). A trial court abuses its discretion if it acts without reference to guiding rules and principles of law to such an extent that its ruling is arbitrary or unreasonable. *Nath*, 446 S.W.3d at 361 (citing *Cire*, 134 S.W.3d at 838–39). A sanctions award is an abuse of discretion if it does not comply with due process because a trial court has no discretion in determining what the law is or applying it to the facts. *Id.* However, we cannot say a trial court abused its discretion simply because it decided a matter differently than we might have in a similar circumstance. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). Moreover, if some evidence supports the trial court's decision, we will not hold it abused its discretion. *Nath*, 446 S.W.3d at 361.

In reviewing a sanctions order for an abuse of discretion, we are not bound by a trial court's findings of fact and conclusions of law, if any. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). Any "findings of fact" made by a trial court in support of a sanctions order are not treated on appeal as findings under Rule 296 of the Texas Rules of Appellate Procedure. *Clark v. Bres*, 217 S.W.3d 501, 513 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). In other words, our review of a sanctions order is not limited to evaluating the sufficiency of the evidence supporting a trial court's findings. *In re Estate of Perez-Muzza*, 446 S.W.3d 415, 419 (Tex. App.—San Antonio 2014, pet. denied). Rather, we must conduct an independent review of the entire record to determine whether there has been an abuse of discretion. *Am. Flood Research*, 192 S.W.3d at 583; *Perez-Muzza*, 446 S.W.3d at 419. The purpose of findings made following the imposition of sanctions is to assist the appellate court in its analysis, assure judicial

deliberation, and enhance the deterrent effect of the sanctions order itself. *Clark*, 217 S.W.3d at 513).

The imposition of sanctions must be in accordance with due process. *Nath*, 446 S.W.3d at 363. Accordingly, "a sanction must be neither unjust nor excessive." *Id.* As the court recognized in *Nath*, this standard was promulgated most clearly in *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991). *Id.* The first prong of the *TransAmerican* test — whether a sanction is just — requires a direct relationship between the offensive conduct, the offender, and the sanction imposed. *Id.* (citing *TransAmerican*, 811 S.W.2d at 917); *Petroleum Solutions, Inc. v. Head*, 454 S.W.3d 482, 489 (Tex. 2014). In other words, a sanction is just if it is directed against the abusive conduct "with an eye toward remedying the prejudice caused to the innocent party," and is "visited upon the true offender." *Nath*, 446 S.W.3d at 363; *see Head*, 454 S.W.3d at 489. Sanctions may also be imposed to secure compliance with relevant rules of civil procedure, punish violators, and deter others from similar misconduct. *Id.* (citing *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003)); *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986) (per curiam). The second prong of the test set out in *TransAmerican* considers the proportionality of the sanction relative to the misconduct — the sanction must not be excessive. *Nath*, 446 S.W.3d at 363; *Head*, 454 S.W.3d at 489. The punishment should fit the crime and be no more severe than necessary to satisfy its legitimate purposes. *Nath*, 446 S.W.3d at 363.

*Discovery Sanctions*

The trial court found R&G committed a discovery violation by failing to respond fully to Contreras's requests for disclosure.[3] More specifically, the trial court found R&G failed to respond

---

[3] In its brief, Liles recognizes that discovery sanctions were imposed only against R&G. Nevertheless, it challenged and addressed the imposition of discovery sanctions "out of an abundance of caution." We agree the only discovery sanction imposed by the trial court was imposed against R&G for its failure to respond fully to Contreras's requests

fully, on behalf of its clients, to the request for disclosure seeking disclosure of "[a]ny settlement agreements described in Rule 192.3(g)" of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 192.3(g). On appeal, R&G contends the trial court abused its discretion in sanctioning it for an abuse of the discovery process because the supplemental disclosure it filed on its clients' behalf complied with the pertinent discovery rules. We disagree.

The discovery of settlement agreements is addressed by the Texas Rules of Civil Procedures. Rule 194 governs requests for disclosure. *See id.* R. 194. Rule 194.2 advises what disclosures may be requested, and subsection (h) of that rule states a party may discover "any settlement agreements described in rule 192.3(g)." *Id.* R. 194.2(h). Thus, to determine what in particular a party may discover with regard to settlement agreements, we must look to Rule 192.3(g). That rule provides that a party may obtain discovery of the existence and contents of any relevant portions of a settlement agreement. *Id.* R. 192.3(g). The rules further provide that if a trial court determines a party is abusing the discovery process in "seeking, making or resisting discovery," the trial court may impose any appropriate sanction authorized in paragraphs (1)–(5) and (8) of Rule 215.2. *Id.* R. 215.3; *see id.* R. 215.2(b)(1–5), (8).

As noted above, we review a trial court's imposition of discovery sanctions for an abuse of discretion. *Cire*, 134 S.W.3d at 838–39. Texas courts have long recognized — before and after *TransAmerican* — that trial courts have broad discretion in matters of discovery and sanctions. *See, e.g.*, *Bodnow Corp.*, 721 S.W.2d at 940; *Johnson v. Davis*, 178 S.W.3d 230, 242 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Sharpe v. Kilcoyne*, 962 S.W.2d 697, 702 (Tex. App.—Fort Worth 1998, no pet.); *Gonzales v. Conoco, Inc.*, 722 S.W.2d 247, 249 (Tex. App.—San Antonio 1986, no writ); *see also Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848,

---

for disclosure as it related to disclosure of the settlement agreement. Thus, our analysis of the discovery sanction applies only to R&G.

884 (Tex. 2017) (holding that broad discretion granted to trial court to impose discovery sanctions is not unlimited). The purpose of a discovery sanction is to: (1) secure compliance with the discovery rules; (2) deter others from violating the discovery rules; and (3) punish those who violate the discovery rules. *Horizon Health Corp.*, 520 S.W.3d at 884 (quoting *Bodnow Corp.*, 721 S.W.2d at 840).

Here, Contreras, in her requests for disclosure — served with her August 2014 original petition, asked FE Express and Bernal for "[a]ny settlement agreements described in Rule 192.3(g)." Thus, R&G, on behalf of its clients, was required to disclose the existence and contents of any relevant portions of a settlement agreement. *See* TEX. R. CIV. P. 192.3(g).

It appears that when R&G first responded on behalf of its clients, there was no written agreement to disclose. However, as discussed above, Navarro and R&G's clients subsequently reached a written settlement agreement. Some sort of settlement agreement, given the timeline, was presumably reached before Liles filed the second wrongful death action on behalf of Navarro in Nueces County on September 11, 2015 — there would have been no reason for Liles to file the second wrongful death action in Nueces County in the absence of a settlement. But it was not until October 6, 2015, that R&G served Navarro and Contreras with FE Express and Bernal's "First Amended Responses to All Plaintiffs' Request for Disclosure." In the amendment, R&G disclosed FE Express and Bernal had reached a settlement agreement with Navarro in the amount of $700,000.00. The response stated:

> Defendants FE Express and Francisco Javier Bernal have reached a settlement with Paulina Navarro Hernandez, Individually and as Next Friend of Minor Children Ana Morales Navarro and Samuel Morales Navarro for Seven Hundred Thousand Dollars and 0/100 ($700,000.00) The settlement has not been finalized. The settlement documents are being prepared and subject to approval by a Court.

No actual settlement agreement was produced until February 1, 2016, after Contreras's counsel made a specific request.

R&G argues its supplemental response was sufficient to comply with the request for disclosure as it identified "the existence of a tentative settlement agreement" and "the contents of the tentative settlement agreement—the parties to the settlement, the amount of the settlement, the status of the pending-court approval of the settlement, and the fact that the settlement documents are still being prepared." It is undisputed that R&G did not produce the actual written settlement agreement to Contreras until her attorney made an additional request for the document, even though the written settlement agreement and release were completed and signed at least by October 12, 2015 — the date of the friendly suit hearing — because at the hearing Navarro testified that the night before the hearing she had met with Liles "and discussed and read the entire agreement." She further stated she was asking the Nueces County trial court to "approve the entire settlement and the structured annuities that are in place" for her children. Moreover, on the same date, but after the hearing, the trial court rendered an agreed final judgment based on the settlement. The judgment included specific terms relating to the amounts to be paid and when such payments would be made.

Rule 192.3(g) requires a party responding to a request for disclosure to disclose not just the existence of a settlement agreement, but the contents of it. *Id.* Under Rule 194.4, a responding party "ordinarily must" serve documents with the response. *Id.* R. 194.4; *see In re GreCon, Inc.*, No. 14-17-000639, 2018 WL 444316, at *3 (Tex. App.—Houston [14th Dist.] Jan. 12, 2018, orig. proceeding) (determining whether settlement agreements were discoverable). Settlement agreements are discoverable for many reasons, including demonstrating bias or prejudice of a party or potential witness. *Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801, 805 (Tex. 1978); *GreCon*, 2018 WL 444316, at *8 (quoting *In re Univar USA, Inc.*, 311 S.W.3d 175, 180 (Tex. App.—Beaumont 2010, orig. proceeding)). Merely disclosing the names of the parties to the settlement, the amount, and that court approval was pending did not disclose "the contents" of the settlement

agreement so as to allow Contreras's counsel, among other things, to determine whether there might be bias or prejudice by the settling parties based on the agreement. Although Rule 408 of the Texas Rules of Evidence generally precludes the admission of settlement agreements, such agreements may be admissible to prove a party's or witness's bias or prejudice. TEX. R. EVID. 408. Admittedly, at the time R&G served Contreras with the supplemental responses, the information therein was full and complete as required by Rule 192.3(g). However, once the settlement agreement was complete — as it obviously was by October 12, 2015, Rule 192.3(g) mandated a full and complete disclosure of the written settlement agreement. *See* TEX. R. CIV. P. 192.3(g). Pursuant to the discovery rules, R&G was required to provide Contreras with additional supplementation — specifically the written settlement agreement — in a reasonably prompt time period. *See id.* R. 193.5; *id.* R. 194.4; *see also GreCon*, 2018 WL 444316, at *3. Yet, R&G waited almost four months to provide Contreras with the settlement agreement and only after Contreras made an addition request, which she was not required to do. The trial court could have found the almost four month delay in supplementation was not reasonably prompt. *See* TEX. R. CIV. P. 193.5(b).

Because there is evidence in the record to establish R&G did not fully comply with the mandates of Rule 192.3(g) until months after the settlement agreement was reduced to writing, and only after a second request from Contreras, we hold the trial court did not abuse its discretion in finding R&G's conduct sanctionable. The imposition was just, i.e., the sanction was directed against the abusive conduct — the failure to respond fully and timely to a request for disclosure — and was visited upon the offending party — the attorneys for FE Express and Bernal, who were in control of supplementing discovery. *See Nath*, 446 S.W.3d at 363; *Head*, 454 S.W.3d at 489. Moreover, the sanction served the purposes of deterring others from violating Rule 192.3(g) as R&G did, and punishing R&G for the violation. *See Horizon Health Corp.*, 520 S.W.3d at 884.

- 13 -

*"Inherent Authority" Sanctions*

The trial court sanctioned both Liles and R&G under its inherent authority based on acts or omissions relating to the filing of the Nueces County suit. Liles and R&G argue the imposition of sanctions was erroneous because their actions comported with Texas law. As stated in Liles's brief, the attorneys "complied with well-settled Texas law and demonstrate[d] smart, effective lawyering."

Courts have inherent authority to impose sanctions, authority beyond that provided by rule or statute. *See, e.g.*, *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (holding courts possess inherent power to discipline attorney's behavior); *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex. 1979) (recognizing that court has inherent power which it may call upon to aid exercise of its jurisdiction, in administration of justice, and in preservation of its independence and integrity); *Roberts v. Rose*, 37 S.W.3d 31, 33 (Tex. App.—San Antonio 2000, no pet.); *see also Chambers v. Nasco, Inc.*, 501 U.S. 32, 45–46, 50 (1991) (holding federal courts have inherent power to impose sanctions on attorneys for bad-faith conduct). A trial court may exercise this inherent authority as necessary to deter, alleviate, or counteract a bad faith abuse of the judicial process. *Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 613 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). This includes sanctioning for interference with a court's traditional core functions, which include: hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgment, enforcing its judgment, managing its docket, and the issuance and enforcement of its orders. *Id.*; *In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App.—Houston [14th Dist.] 2006, no pet.). However, the inherent power to sanction is not limited to interference with a court's core functions. *Westview Drive Invs.*, 522 S.W.3d at 613. A court may also use its inherent power to impose sanctions for conduct, that if tolerated, "breeds

disrespect for and threatens the integrity of our judicial system." *Id.* (quoting *Bennett*, 960 S.W.2d at 40).

The attorneys' actions and omissions in this case — considered individually or in combination — initially would appear, when considered in a vacuum, to constitute legal actions not necessarily subject to sanctions under a trial court's inherent authority:

- filing a wrongful death action;

- waiving service by filing an answer, *see* TEX. R. CIV. P. 121 (stating that answer constitutes appearance of defendant so as to dispense with necessity for issuance or service of citation upon him); *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 61 (Tex. 2008) (holding that judgment shall not be rendered against one who was neither named nor served as defendant unless he waives service by making general appearance before court);

- filing a friendly suit to secure approval of a settlement that requires judicial approval, such as a suit involving a minor, *see* TEX. R. CIV. P. 44(2); *see, e.g.*, *J. Fuentes Colleyville, L.P. v. A.S.*, 501 S.W.3d 239, 241 (Tex. App.—Fort Worth, 2016, no pet.); *Maltsberger v. Maloney*, No. 04-05-000579-CV, 2006 WL 3725545, at *1 (Tex. App.—San Antonio Dec. 20, 2006, pet. denied) (mem. op.);

- filing suit in an impermissible venue, *see In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999) (holding that plaintiff has first choice to fix venue by filing suit in county of choice); *Marantha Temple, Inc. v. Enter. Prods., Inc.*, 833 S.W.2d 736, 741 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (holding that plaintiff has right to file suit in any permissible county and plaintiff that files suit in impermissible county waives option of where to file suit); *see also* TEX. R. CIV. P. 87(3)(a) (stating that venue facts, when properly pled, shall be taken as true unless specifically denied by adverse party).

- knowingly waiving a complaint about improper venue by failing to object, *see* TEX. R. CIV. P. 86(1); *Combined Specialty Ins. Co. v. Deese*, 266 S.W.3d 653, 666 (Tex. App.—Dallas 2008, no pet.) (holding that even mandatory venue provisions can be waived if there is no challenge in accordance with Rule 86);

- moving for the appointment of a guardian ad litem in a suit involving minors, *see* TEX. R. CIV. P. 173.3(a); *see Patterson v. McMickle*, 191 S.W.3d 819, 822 (Tex. App.—Fort Worth 2006, no pet.) (attorney retained by mother of minor child to pursue medical negligence claim on child's behalf moved for appointment of guardian ad litem).

- providing notice of hearing, *see* TEX. R. CIV. P. 21(c) (parties are required to serve other parties with notice not less than three days before time specified for hearing); *Prototype Mach. Co. v. Boulware*, 292 S.W.3d 169, 172 (Tex. App.— San Antonio 2009, no pet.) (reversing and remanding trial court's order striking intervention when movant failed to provide three days' notice of hearing pursuant to Rule 21); and

- setting and participating in a friendly suit hearing to secure judicial approval of a settlement for a minor, *see, e.g., J. Fuentes Colleyville, L.P.*, 501 S.W.3d at 242.

However, when the attorneys' acts and omissions are considered in context, the trial court could have determined, in its discretion, that the attorneys showed disrespect for, and exhibited a collusive intent to undermine, the judicial system and the Webb County trial court's administration of justice, particularly given that this matter involved four minor children.

When Liles filed the petition in Nueces County, the same wrongful death action was still pending in Webb County where it was first filed. Liles served R&G's clients with a copy of the petition, but neither served nor notified Contreras of the filing. Liles failed to advise the Webb County trial court that it had filed a second suit in Nueces County, nor did it make the Nueces County trial court aware of the action pending in Webb County. The petition, on its face, appeared to be nothing more than a wrongful death action. Liles did not include any language in the petition to suggest the suit was a friendly suit for purposes of settlement. *Compare J. Fuentes Colleyville, L.P.*, 501 S.W.3d at 241–42 (in friendly suit petition, plaintiff included not only the general negligence allegations for personal injury action, but advised all claims had been settled, amount of settlement, and noted purpose of suit was for trial court to approve settlement for minor). In addition, with regard to venue, Liles alleged venue was proper "under the general venue rule." This was a misstatement of law because the accident did not occur in Nueces County, none of the parties resided in Nueces County, and FE Express did not have its principal office in Nueces County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a) (West 2017). The only connection

to Nueces County was the fact that Navarro's attorneys had their principal office in that county. Soon after filing the suit in Nueces County, Liles sought appointment of a guardian ad litem for the protection of Navarro minors. Again, without notice to Contreras's counsel or the Webb County court.

In response to the Nueces County petition, R&G agreed to waive service on behalf of its clients. Moreover, R&G, despite knowing venue was not proper in Nueces County, declined to challenge Liles's misstatement regarding venue by not filing a motion to transfer venue and allowing the case to continue in Nueces County. The trial court could have found this to be evidence of collusive conduct by Liles and R&G to keep Contreras and the Webb County trial court in the dark regarding the settlement.

Although R&G supplemented its responses to Contreras's requests for disclosure six days prior to the final hearing in Nueces County, advising Contreras's counsel of a settlement, the language in the response appears carefully contrived to avoid disclosure of the action pending in Nueces County. In the response, R&G stated the settlement documents were being prepared "and subject to approval by a Court" — not "a court in Nueces County" or the "Nueces County Court at Law No. 1" — again, leaving Contreras in the dark and without information that might have been used to advise the Webb County trial court about the happenings in Nueces County.

Liles and R&G continued the process, which culminated in an October 12, 2015 hearing after which the Nueces County trial court approved the settlement and rendered an agreed judgment. There is nothing in the record to indicate the Nueces County judge knew anything more than there were "other claimants" to the insurance proceeds. Liles and R&G did not see fit to advise the Nueces County judge that those "other claimants" included two other minor children in a pending suit in Webb County. Notably, Liles waited until six days prior to the Nueces County hearing to nonsuit Navarro's Webb County suit. Liles had permitted the Webb County suit to

remain pending until October 6, 2015, despite having filed the suit in Nueces County suit on September 11, 2015. Thus, identical suits were pending on behalf of Navarro in two counties for almost thirty days without notice to either court or Contreras. If Liles and R&G believed their conduct in filing and participating in the Nueces County suit was completely above board and nothing more than effective lawyering, why the secrecy? Why, as the Webb Count trial court determined, procure the settlement in "darkness"?

At the sanctions hearing, Liles admitted the attorneys pursued the action in Nueces County to avoid Rodriguez — counsel for Contreras — and any effort he might make to disrupt the settlement. They point out Contreras had no authority or right to stop or interfere with the settlement even if the settlement had exhausted the insurance proceeds. *See Tex. Farms. Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994) (holding that insurer faced with multiple claims and inadequate proceeds may enter into reasonable settlement with one of claimants even if it exhausts or diminishes proceeds available to satisfy other claims). We do not disagree with this general proposition. But the attorneys' avoidance of Contreras's counsel suggests something more, particularly given the involvement of competing minors, and supports the trial court's decision to impose sanctions under its inherent authority.

It is undisputed that two sets of minors were competing over limited insurance funds — this was known by all parties. When minors bring suit, trial courts have the responsibility to protect their best interests. *Urbish v. The Honorable 127th Judicial Dist. Court*, 708 S.W.2d 429, 432 (Tex. 1986). Here, when Navarro and Contreras filed suit, the Webb County trial court became responsible for the best interests of all four minor children. The attorneys' decision to file suit in Nueces County to avoid Contreras's counsel suggests a belief by the attorneys that not only would her counsel lodge objections to any settlement that awarded the Navarro minors more than half of the available settlement funds, but those objections might have found favor with the Webb County

trial court given its duty to protect all of the minors under its jurisdiction, thereby impairing any settlement between Liles's clients and R&G's clients. Thus, we hold the Webb County trial court could have concluded, in its discretion, complicity by the attorneys to keep the court in the dark regarding their settlement actions, thereby unilaterally divesting the trial court of its jurisdiction over and ability to protect all the minors under its authority.

Moreover, as the trial court recognized, attorneys have a duty of candor toward the tribunal. *See* TEX. RULES DISCIPLINARY P. R. 3.03(a)(1), reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. A-1 (West 2013) (stating lawyer shall not knowingly make false statement of material fact or law to tribunal). They also have a duty not to engage in deceptive conduct. *Id.* 8.04(a)(3) (stating lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Additionally, although attorneys are expected to act as zealous advocates for their clients, an attorney cannot allow his zealous representation "to supersede the attorney's obligation to maintain confidence in our judicial system." *Nath*, 446 S.W.3d at 367 (citing TEX. RULES DISCIPLINARY P. R., pmbl. ¶ 2).

The attorneys argue their actions neither violated the disciplinary rules nor warrant sanctions because no misrepresentations were made to the trial court and all of the actions taken were legal actions in their clients' best interests. Given the evidence and the context in which the attorneys' conduct took place, we hold the trial court could have determined otherwise. Although there may have been no affirmative misrepresentations to the Webb County trial court, silence may constitute a misrepresentation when there is a duty to speak and a person remains silent. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). The attorneys had a duty of candor toward the tribunal, and they admittedly took every action necessary to avoid the possibility that the Webb County trial court might learn of their actions in Nueces County, including failing to advise the Nueces County judge of the pending action in Webb County and the involvement of additional

minors. Although, as R&G points out, the affirmative actions taken in Nueces County — to secure the settlement so as to avoid discovery of the events by counsel for Contreras or the Webb County trial court — were executed by Liles, R&G's actions reflect complicity with Liles. Liles would not have been able to succeed without R&G's involvement and agreement.

The attorneys also argue the Webb County trial court was without authority to sanction based on conduct that occurred in Nueces County. Under the facts of this case we disagree. The cases relied upon by the attorneys for this position are distinguishable. In those cases, a trial court in one jurisdiction attempted to sanction attorneys under Chapter 10 of the Texas Civil Practice and Remedies Code or Rule 13 of the Rules of Civil Procedure based on documents filed in another jurisdiction. *See Alanis v. Valdespino*, No. 04-11-00122-CV, 2012 WL 1865498, at \*5 (Tex. App.—San Antonio May 23, 2012, no pet.) (holding that claim asserting that pleading was groundless had to be asserted in cause in which pleading was filed, not as separate cause of action in different court); *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that trial court lacked jurisdiction to impose Rule 13 sanctions based on a filing in bankruptcy court); *Mantri v. Bergman*, 153 S.W.3d 715, 718 (Tex. App.—Dallas 2005, pet. denied) (holding that only court with jurisdiction where allegedly frivolous litigation was pending had jurisdiction to impose sanctions under Chapter 10). Here, the Webb County trial court did not sanction the attorneys under Chapter 10 for filing an improper document in Nueces County, nor did it sanction them under Rule 13 for filing frivolous, groundless, or harassing documents in Nueces County. Rather, they were sanctioned under the trial court's inherent authority for interfering with the Webb County court's core functions, including its jurisdiction, and disrespecting and threatening the integrity of the judicial system. *See Bennett*, 960 S.W.2d at 40; *Westview Drive Invs.*, 522 S.W.3d at 613.

Contrary to the attorneys' arguments, we further find the supreme court's decision in *Bennett* indistinguishable and persuasive. In *Bennett*, the plaintiffs' attorneys filed sixteen lawsuits, each of which was randomly assigned to a separate district court in Nueces County. *See Bennett*, 940 S.W.2d at 36. The plaintiffs' attorneys admitted that none of the sixteen suits was assigned to the particular district court they desired. *Id.* Therefore, they filed a seventeenth suit, which was assigned to their forum of choice. *Id.* After securing the court of choice, the attorneys nonsuited the other sixteen lawsuits. *Id.* at 37. Ultimately the trial court that was assigned the seventeenth suit sanctioned the attorneys pursuant to its inherent authority for abusing the judicial process. *Id.* at 39. The supreme court upheld the sanctions, holding the attorneys' actions were sanctionable because they bred disrespect for and threatened the integrity of the judicial system. *Id.* at 40. The conduct was sanctionable even thoug, as here, none of the actions taken by the plaintiffs' attorneys, when considered in a vacuum was sanctionable — filing suit, nonsuiting, etc. *See id.* The same is true in this case. Although nothing the attorneys did in Nueces County would generally constitute bad faith or show a disrespect for the judicial system, when considered in context and in conjunction with the basis for the actions — avoidance of any potential disruption of the settlement by the Webb County trial court — the trial court could have found the conduct was sanctionable. *See id.* The attorneys overlook the significant harm to the judicial system inherent in their lack of candor with regard to the settlement.

In sum, we hold the Webb County trial court could have, in its discretion, concluded the attorneys' actions and omissions in Nueces County are the type of conduct, that if tolerated, would breed disrespect for and threaten the integrity of the judicial system as a whole. *See Bennett*, 960 S.W.2d at 40. Based on the evidence, the trial court could have determined the attorneys' decisions and actions interfered with the court's ability to decide issues of fact, questions of law, and control the management of its docket. *See Westview Drive Invs.*, 522 S.W.3d at 613. And, it could have

found the attorneys' conduct in keeping the trial court in the dark regarding the settlement interfered with its jurisdiction, administration of justice, as well as its independence and integrity. *See Eichelberger*, 582 S.W.2d at 398–99; *Rose*, 37 S.W.3d at 33.  Accordingly, our review of the course of conduct undertaken by Liles and R&G, as well as the intent that can be inferred from that conduct, leads us to conclude that the trial court did not abuse its discretion in sanctioning Liles or R&G under its inherent authority.

*Chapter Ten Sanctions*

In addition to sanctioning Liles under its inherent authority, the trial court sanctioned Liles pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code for filing the nonsuit in Webb County for an improper purpose.  Liles argues it was entitled to file the nonsuit and its conduct is not sanctionable.

Section 10.004(a) of Chapter 10 provides that if a court determines that a person has signed a pleading or motion in violation of section 10.001, the court may impose a sanction on the party. TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a).  Section 10.001(1) provides that a sanctionable pleading includes a pleading that is presented for "any improper purposes." *Id.* § 10.001(1).

We recognize that pursuant to Rule 162 of the Texas Rules of Civil Procedure, a plaintiff may take a nonsuit at any time before she has introduced all of her evidence other than rebuttal evidence. TEX. R. CIV. P. 162.  Courts, including this one, have described this right as unqualified and absolute. *E.g., Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008); *Vick v. Floresville Indep. Sch. Dist.*, 505 S.W.3d 24, 31 (Tex. App.—San Antonio 2016, pet. denied); *Genesis Producing Co., L.P. v. Smith Big Oil Corp.*, 454 S.W.3d 655, 659 (Tex. App.—Houston [14th Dist.] 2014, no pet.).  This right is important and firmly rooted in Texas jurisprudence. *Aetna Cas. & Sur. Co. v. Specia*, 849 S.W.2d 805, 806 (Tex. 1993).

However, even the filing of a nonsuit is subject to sanctions. *See Bennett*, 960 S.W.3d at 40. Here, the filing of the nonsuit in Webb County — undertaken approximately twenty-five days after suit was filed in Nueces County — was just the final act in the collusive scheme perpetrated by Liles and R&G to avoid any objection to the settlement that might have found favor by the Webb County trial court. As such, we hold the trial court was within its discretion in concluding the nonsuit was filed for an improper purpose. We therefore hold the trial court did not abuse its discretion in imposing sanctions upon Liles under Chapter 10 for filing the nonsuit for an improper purpose.

### *Amount of Sanctions*

As set out above, the trial court did not err in imposing sanctions. The only remaining question is whether the amount of sanctions imposed was excessive. As set out above, a sanction does not comport with due process if it is excessive. *Nath*, 446 S.W.3d at 363. Under the second prong of the *TransAmerican* test, we consider the proportionality of the sanction relative to the misconduct. *Nath*, 446 S.W.3d at 363; *Head*, 454 S.W.3d at 489. A sanction should be no more severe than necessary to satisfy its legitimate purposes. *Nath*, 446 S.W.3d at 363.

Here, the trial court imposed numerous types of sanctions: court costs, attorneys' fees, monetary penalties, appellate fees in the event of an unsuccessful appeal, and legal ethics education. However, we hold we need not address whether the sanctions imposed were excessive because that issue either has not been presented, or has not been presented in such a way as to require appellate review.

With regard to Liles, Liles has not challenged the amount of sanctions imposed. Rather, Liles's only appellate complaint concerns the actual imposition of sanctions. Liles makes no argument in its brief that the amounts imposed are excessive, and therefore, violative of due process.

It is the appellant's burden to raise and discuss assertion of error. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso, 2007, no pet.); *see* TEX. R. APP. P. 38.1(f), (i). We have no duty — in fact, no right — to perform an independent review of the appellate record and the applicable law to determine if the trial court committed error. *Donohue v. Hernandez*, No. 04-15-00695-CV, 2016 WL 7119049, at *5 (Tex. App.—San Antonio Dec. 7, 2016, no pet.) (mem. op.); *Ihnfeldt v. Reagan*, No 02-14-00220-CV, 2016 WL 7010922, at *9 (Tex. App.—Fort Worth Dec. 1, 2016, pet. denied) (mem. op.); *Valadez*, 238 S.W.3d at 845. In civil cases, we have no discretion to consider an issue not raised in appellant's brief, even if the court may perceive that the ends of justice seem to require it. *Curnutt v. Conocophillips Co.*, 508 S.W.3d 641, 644 (Tex. App.—El Paso, 2016, no pet.); *Krumb v. Porter*, 152 S.W.2d 495, 496 (Tex. Civ. App.—San Antonio 1941, writ ref'd). To do otherwise would require the appellate court to construct an argument for appellant and engage in research to support the argument. This would run afoul of our position as neutral and unbiased adjudicators of a dispute; we would become advocates for the party. *Ihnfeldt*, 2016 WL 7010922, at *9; *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied). After reviewing Liles's appellate brief we hold Liles has presented nothing for our review with regard to the second prong of the *TransAmerican* test, i.e., the amount of the sanctions.

Although R&G raises the issue of excessiveness, it does so in a very specific way. R&G's entire argument on excessiveness is based on the premise that it was sanctioned $37,180.00, plus $10,000.00 in contingent appellate attorney's fees, for the discovery violation. However, the record does not support this premise. As discussed above, the trial court imposed sanctions on R&G not only for a discovery violation pursuant to the Texas Rules of Civil Procedure, but under its inherent authority for R&G's collusive conduct with Liles. The trial court made this clear in its order and on the record. In the order, as set out above, the trial court specifically notes the Chapter 10 violation by Liles, the discovery violation by R&G, and the collusive conduct by both

sets of attorneys with regard to procurement of the settlement agreement in Nueces County. At the conclusion of the sanctions hearing, on the record, the trial court sets out the collusive conduct and then specifically states that in order to deter such conduct it would impose a monetary sanction of $25,000.00 against R&G — and $50,000.00 against Liles. This is exactly what the trial court did in its sanctions order. Thus, R&G was not sanctioned $37,180.00 for a single discovery violation. However, R&G fails to parse its excessiveness argument based on the sanctions actually imposed for separate conduct. Rather, R&G simply lumps the monetary sanctions together, arguing all of the amounts were imposed for a single discovery violation, which is inaccurate.

As this is R&G's only argument regarding excessiveness, and it is based on an erroneous premise, we conclude R&G has not presented an apposite argument for our review. As noted above, it is not this court's responsibility to construct an argument for an appellant and engage in research to support the argument as it would render us advocates as opposed to unbiased adjudicators. *See Ihnfeldt*, 2016 WL 7010922, at *9. We have no duty or right to independently review the record and the law to determine if the trial court committed error. *Donohue*, 2016 WL 7119049, at *5.

### *Liles's Counter Motion for Sanctions Pursuant to Rule 13 & Chapter 10*

After Contreras's attorney filed the motion for sanctions, Liles filed a counter motion for sanctions, asking the trial court to sanction Rodriguez under Rule 13 of the Rules of Civil Procedure and Chapter 10 of the Civil Practice and Remedies Code for filing the motion for sanctions. The trial court denied the motion. Liles contends the trial court erred in denying its motion for sanctions.

Rule 13 of the Texas Rules of Civil Procedure provides that pleadings that are groundless and filed in bad faith, to harass, or false when made are subject to sanctions:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who … make statements in [a] pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt … [and] the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction … upon the person who signed it, a represented party, or both.

TEX. R. CIV. P. 13; *see Nath*, 446 S.W.3d at 362. It is not enough for the signed document to be groundless, but it must have also been brought in bad faith, to harass, or have been false when made. TEX. R. CIV. P. 13; *see Nath*, 446 S.W.3d at 362–63. As set out above, Chapter 10 provides a court may sanction a party if it determines that a person has signed a pleading or motion that is presented for "any improper purposes." TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001(1), 10.004(a).

Liles argues the allegations in the sanctions motion filed by Rodriguez are sanctionable because many lacked evidentiary support and even the ones with evidentiary support do not support a credible argument for sanctions. Liles contends there was nothing in the motion "that was even arguably meritorious," but it was still required to respond to the motion. Thus, Liles contends the trial court erred in denying its motion for sanctions against Rodriguez. Having determined the trial court did not err in sanctioning Liles and R&G for the acts and omissions set out in the Contreras sanctions motion, it would be counter intuitive to hold the trial court erred in denying Liles's counter motion for sanctions. Accordingly, we hold the trial court did not err in denying Liles's motion for sanctions.

### *Pending Motion & Temporary Order*

At the time this appeal was submitted, there was a pending motion for access to the record. In addition, this court had rendered an order granting a temporary stay. We will now deal with these matters in light of our disposition.

In February 2017, Contreras filed in this court a "Motion for Access to the Appellate Record." In the motion, Contreras advised that part of the appellate record consists of documents submitted to the trial court *in camera* and then sealed. Contreras asserted she needs access to the documents to properly prepare for appeal. This court ordered the motion carried with the appeal.

When Contreras filed her brief, she renewed her request for access to the *in camera* documents, arguing a lack of access to the documents prevented her from briefing that evidence in detail. However, we hold that access to the *in camera* documents was not necessary for full briefing of this matter. As is clear from our holding, Contreras was able to rely on and point to sufficient evidence in the unsealed portion of the appellate record to permit this court to render a decision affirming the sanctions order. Accordingly, any complaint about access to the *in camera* documents is now moot. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012) (holding matter is moot when court's action on merits cannot affect parties' rights or interests). We therefore deny as moot the motion for access to the portion of the appellate record filed in this court under seal.

In addition to the foregoing motion filed by Contreras, Liles also filed a motion in this court prior to full briefing, asking for a stay. Liles filed its notice of appeal in this court on October 3, 2016. Concomitant with that filing, Liles filed a "Conditional Emergency Motion to Stay Enforcement." Therein, Liles asked this court to stay the portions of the trial court's order that required Liles: (1) to deposit monetary sanctions and contingent appellate attorneys' fees into the registry of the court within ten days of the trial court's September 23, 2016 sanctions order; and (2) to pay the court-ordered costs and attorney's fees within three days of the trial court's sanction order. On October 3, 2016, after reviewing the motion, we rendered an order granting Liles's motion. We ordered the portion of the trial court's sanctions order that required Liles to deposit

monies and pay fees stayed pending further order of this court.  Having determined the trial court did not abuse its discretion in imposing the sanctions, we now order our temporary stay lifted.

### *Contreras Cross Appeal*

Contreras filed a notice of appeal to contest the trial court's refusal to permit her to review the documents Liles and R&G submitted for *in camera* inspection by the trial court.  The trial court wished to review the documents prior to rendering a decision on Contreras's motion for sanctions.  After reviewing the documents, and as set out in detail above, the trial court granted Contreras's motion for sanctions.

On appeal, Contreras contends she has been "unfairly denied access to a portion of the record supporting her argument to affirm [the] sanctions award."  She argues she is "entitled to review and rely on the *in camera* documents in support of her [appellate] arguments" and that this court "should reverse the trial court's refusal to provide Contreras access to the documents."  The argument presented in this cross appeal is essentially the same as that urged by Contreras in her motion for access to the record — Contreras needs access to the *in camera* documents reviewed by the trial court to properly present her appeal.

As set out in our discussion above, given our affirmance of the sanctions order, the unsealed portion of the record was sufficient to permit Contreras to argue, and this court to hold, that the trial court did not abuse its discretion by imposing sanctions on Liles and R&G.  Thus, we hold any complaint about access to the *in camera* documents is now moot.  *See Heckman*, 369 S.W.3d at 162.  Granting Contreras access to the *in camera* documents cannot affect her rights given our decision affirming the sanctions order.  Alternatively, if the cross appeal is not moot, and the trial court's refusal to grant Contreras access to the *in camera* documents was error, we hold the error was harmless.  *See* TEX. R. APP. P. 44.1(a)(2).  The portion of the record to which Contreras had

access was sufficient for her to properly present her case to this court, and for this court to find in her favor, precluding a finding of harm. *See id.*

## CONCLUSION

Based on the foregoing analysis, we overrule the complaints presented by Liles and R&G with regard to the trial court's imposition of sanctions and hold that the trial court did not abuse its discretion in imposing sanctions as set out in its September 23, 2016 order. We further hold that Liles failed to raise an issue challenging the amount of fees imposed, and the issue raised by R&G with regard to the amount of fees was based on a faulty premise, so neither issue is properly presented for our review. As to the *in camera* documents, we deny as moot Contreras's motion for access to the sealed portion of the record. On the same basis, we hold the cross appeal is also moot, or any error by the trial court is harmless. Finally, we order the temporary stay imposed on October 3, 2016 lifted. Accordingly, we affirm the trial court's order of sanctions.

Marialyn Barnard, Justice