**Opinion filed September 11, 2020**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-18-00234-CV

_____

## CATHERINE DREYER, Appellant

## V.

## CHRISTIE L. WISLICENUS, ADMINISTRATRIX OF THE ESTATE OF MARK D. WISLICENUS, AND ROGENNA G. HANSON, TRUSTEE OF THE ROGENNA G. HANSON REVOCABLE LIVING TRUST, Appellees

**On Appeal from the 42nd District Court**

**Coleman County, Texas**

**Trial Court Cause No. CV06634**

## M E M O R A N D U M   O P I N I O N

Appellant, Catherine Dreyer, appeals from a post-answer default judgment in which the trial court ordered that legal title to 59.80 acres in Coleman County (the Property) is vested in Appellee, Rogenna G. Hanson, Trustee of the Rogenna G. Hanson Revocable Living Trust (the Trust), and that every document executed by Hanson, either individually or as trustee of the Trust, in which she purported to

transfer to Appellant or to Mark Dreyer any right, title, or interest in the Property or in any improvements located on the Property was rescinded, was of no force and effect, and was set aside. In three issues, Appellant asserts that the trial court erred when it rendered judgment because (1) a trespass to try title claim was the exclusive remedy of the Trust and of Appellee, Christie L. Wislicenus, Administratrix of the Estate of Mark D. Wislicenus (the Estate),[1] (2) Appellant did not receive prior notice of the trial setting, and (3) the Estate and the Trust presented no evidence to support their theories of recovery. We reverse the trial court's judgment to the extent that it declared that the 2011 handwritten gift document signed by Hanson was rescinded. We affirm the trial court's judgment in all other respects.

*Background Facts*

The Trust purchased the Property on December 16, 2010. A metes and bounds description of the Property was attached to the deed.

After Appellant married Hanson's son, Mark, in July 2011, Hanson prepared a handwritten, two-paragraph document pursuant to which the Trust purported to give Mark and Appellant approximately 1.5 acres of the Property on which a wood frame house and a garage were located. However, the "legal description" of the land in the handwritten gift document included only two boundary lines and was not a "complete description" of the land that Hanson intended to give to Mark and Appellant. Hanson "revoked" her signature on the handwritten gift document on June 25, 2012, because there was an "argument about exactly how much land they were going to get."

On April 23, 2012, Hanson, Mark, and Appellant signed a "Document of Promise" that Mark had prepared. The land subject to the Document of Promise was

---

[1]The parties do not dispute that "Mark Dreyer" and "Mark Wislicenus" are the same person. Further, because individuals involved in this suit have the same surname, we will refer to individuals by first name as necessary for clarity.

a "59.7 acre parcel of land in Coleman County" located "south of CR 334 and west of CR 346" that was "now known as the Grace Ranch." In order to provide Mark and Appellant "the opportunity to purchase this property for $100,000.00, all cash," Hanson promised to "retain" this "parcel" for three years. If Mark and Appellant did not purchase the land by April 23, 2015, Hanson had the right to sell the land "with the exception of the house and 2.19 acres surrounding [the] house." The Document of Promise did not describe the boundaries of the 2.19 acres.

Appellant and Mark did not purchase the Property pursuant to the Document of Promise. Rather, on February 6, 2014, Hanson, Mark, and Appellant signed a "Purchase of Grace Ranch" that Mark had prepared. The parties agreed that the Purchase of Grace Ranch "supersede[d]" the Document of Promise or "any other previous agreements." The land that was the subject of the Purchase of Grace Ranch was "located south of CR 334 and west of CR 346" and was "now known as 'The Grace Ranch.'" The land was described as "59.80 acres of land in the Thomas Casey Survey #275, Abstract #126, Coleman County, Texas, more fully described on Exhibit 'A' attached hereto." There was no Exhibit A attached to the Purchase of Grace Ranch.

Pursuant to the Purchase of Grace Ranch, the Trust agreed to sell the Property to Mark and Appellant for $100,000. Mark and Appellant agreed to pay a $20,000 down payment and to make annual payments of $2,400, or a sum negotiated each year, until either "the loan" of $20,000 was "paid in full to Sandra E. Wislicenus or until the demise of Seller, Rogenna G. Hanson." At Hanson's death, the Property would be "[d]eeded in its entirety" to Mark and Appellant "as part of their inheritance from the Estate of Rogenna G. Hanson." The $20,000 loan that was referenced in the Purchase of Grace Ranch was a personal loan from Sandra to Hanson.

3

Although the Purchase of Grace Ranch provided for the payment of $40,000 of the purchase price through the repayment of Sandra's $20,000 loan to Hanson and the $20,000 down payment, it did not specify how or when the remaining $60,000 of the purchase price would be paid. Mark and Appellant made the $20,000 down payment and made payments of $2,400 in February 2015 and February 2016. In March 2017, Mark died.

The Estate filed this suit against Appellant and the Trust on March 6, 2018, "to determine the validity of the documents signed by Trustee, [Mark,] and [Appellant]" and the "equitable ownership, if any" that the Estate had in the Property. The Estate alleged that the handwritten gift document, the Document of Promise, and the Purchase of Grace Ranch "infer[red] the existence of an executory contract." The Estate alleged that the executory contract did not comply with Subchapter D of Chapter 5 of the Texas Property Code. The Estate also alleged that, in 2017, Mark and Catherine failed to make a required payment under the contract. The Estate requested that the trial court declare (1) who owned legal title to the Property, (2) whether there was a valid agreement for Mark to purchase the Property, (3) whether the Estate or Appellant had an equitable interest in the Property, and (4) whether Appellant had any homestead rights in the Property.

The Trust filed its original answer on March 29, 2018, and Appellant, appearing pro se, filed her original answer on April 2, 2018. Appellant listed her e-mail address on her answer. On April 3, 2018, the Estate's attorney, S. Clinton Nix, requested that the case be set for trial before the court "at least 45 days from this date." Nix sent a copy of the request to Appellant at the e-mail address listed on Appellant's answer. On April 3, 2018, Darla Quinney, the trial court administrator, prepared a letter to "All Parties" in which she advised that, at Nix's request, the case had been set for trial at 9:00 a.m. on May 29, 2018.

4

On May 21, 2018, the Trust filed a cross-action against Appellant. The Trust argued that Hanson's attempts to convey the Property were void and should be rescinded because (1) the Trust's assets had been commingled with Hanson's assets and liabilities, (2) Hanson had attempted to make a gift of assets that belonged to the Trust, and (3) Hanson signed the documents "in a manner that was outside the capacity or authority conferred by the Trust or by the laws of the State of Texas." The Trust also asserted that Appellant was in default under the Purchase of Grace Ranch and that the Trust had sent notice that it had terminated the executory contract. The Trust requested a declaration that "the instrument or instruments in question are invalid" and that the documents were "rescinded, in whole or in part, and removed from the title" to the Property.[2]

Appellant did not appear for trial on May 29, 2018. The trial court heard testimony from Hanson and Christie and reviewed the Trust's deed to the Property, the handwritten gift document, the Document of Promise, and the Purchase of Grace Ranch. The trial court orally ruled that the Trust was the legal owner of the Property and that the Estate had an "offset" of $24,800, plus any taxes that had been paid on the Property. The trial court instructed counsel to draft the judgment in terms of rescinding any and all contracts or gifts between the parties because the agreements were invalid or unenforceable "[f]or a number of reasons."

On June 12, 2018, the trial court signed a declaratory judgment in which it stated that it had considered both the Estate's request for declaratory relief and the Trust's cross-action. The trial court ordered (1) that legal title to the Property was vested in the Trust; (2) that each and every instrument executed by Hanson, whether individually or as trustee, in which she purported to transfer to Mark and/or to

_____

[2]Appellant filed a pro se response to the Trust's cross-action on June 8, 2018. Although titled an "original answer," Appellant requested that the "executory contract" be declared binding and that she be awarded "triple the economic damages AND mental anguish."

Appellant any right, title, or interest as to the Property or as to any improvements located on the Property was rescinded, was of no force and effect, and was set aside; and (3) that the Trust was required to pay the Estate $24,800 for the Estate's equitable claim to the Property.

Appellant retained counsel and filed a motion for new trial on June 15, 2018. Appellant asserted that her failure to appear at trial was the result of an accident or mistake, rather than due to an intentional act or to conscious indifference. Appellant specifically alleged that she "was not noticed of the trial date, time or location and was unaware that a hearing had been set in this matter."

At the hearing on the motion for new trial, Appellant admitted that she received by e-mail Nix's letter in which he requested a trial date and Quinney's letter in which she notified the parties that the case was set for trial on May 29, 2018. Appellant knew that the trial had been set but did not think that the trial date was "official until the Judge signed something and there was a certificate of service sent through the e-mail filing." Appellant admitted that she did not call Quinney or Nix to determine if the trial was set for May 29, 2018.

Appellant also admitted that she was in the courthouse early on the morning of May 29, 2018. Although Appellant believed that she left the courthouse before the trial was scheduled to start, Deputy Ryan Tucker testified that he saw Appellant in the courthouse at the time that the trial was taking place.

According to Appellant, the accident or mistake that caused her not to appear for trial was her belief that a certificate of service or court order was necessary before a trial date was set. Appellant also testified that she had "paid the ranch off" and had a meritorious defense to the claims. Appellant indicated that she was prepared to go to trial quickly and that, in her opinion, neither the Estate nor the Trust would be prejudiced if the motion for new trial was granted.

6

The trial court made oral findings that Appellant "was noticed" of the trial setting and "was aware that a hearing had been set" and denied the motion for new trial. The trial court also made the following written findings of fact and conclusions of law:

> On June 15, 2018 [Appellant] filed a Motion for New Trial alleging that she had not received notice of the trial date. On July 26, 2018[,] a hearing was held on the Motion for New Trial and [Appellant] was called to testify. [Appellant] testified that she received the email from the court setting the trial date and read it. Because the notice setting the trial date was lawful and because [Appellant] had actual notice of the trial setting and chose not to appear, the Motion for New Trial was denied.

*Analysis*

In her first issue, Appellant contends that the trial court erred when it granted declaratory relief because the Estate and the Trust sought a determination of title to land and, therefore, their exclusive remedy was a trespass to try title claim.

The Estate and the Trust sought declarations as to the ownership of legal and equitable title to the Property and as to the validity of any agreement to convey the Property to Mark or to Appellant. "[I]n most cases, the proper cause of action when title is in dispute is a trespass to try title action." *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 723 (Tex. App.—Eastland 2011, pet. denied); *see also* TEX. PROP. CODE ANN. § 22.001 (West 2014) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."); *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004). However, a complaint about a failure to use a trespass to try title action instead of a declaratory judgment action can be waived if not raised in the trial court. *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 321 (Tex. App.—Amarillo 2001, pet. denied); *see also Mid Pac Portfolio, LLC v. Welch*, No. 01-15-00404-CV, 2016 WL 828150, at *3 (Tex. App.—Houston [1st Dist.] Mar. 3, 2016, no pet.) (mem. op.) (holding that parties

waived complaint that dispute should have been brought as a trespass to try title action rather than a declaratory judgment action when they failed to object in the trial court); *Teon*, 357 S.W.3d at 726. Appellant failed to object either before trial or in her motion for new trial that the Estate or the Trust was required to seek relief through a trespass to try title cause of action. Therefore, Appellant has waived this issue on appeal. We overrule Appellant's first issue.

In her second issue, Appellant asserts that the trial court erred when it rendered judgment because she did not receive adequate notice of the trial setting. Appellant specifically argues that her right to due process was violated because (1) she did not receive forty-five days' notice of the trial setting as required by Rule 245 of the Texas Rules of Civil Procedure and (2) even if she received notice that the Estate's petition for declaratory judgment was set for trial, she did not receive notice that the Trust's cross-action was also set for trial.

Appellant raised her claim—that she did not receive notice of the May 29, 2018 trial setting—in her motion for new trial. The trial court denied the motion. We review a trial court's denial of a motion for new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). A trial court abuses its discretion when it refuses to grant a new trial after a default judgment when the defendant establishes all three elements of the test set out in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). *Id.*

*Craddock* provides that the trial court should grant a new trial when (1) the defendant's failure to answer or to appear was not intentional or the result of conscious indifference, but was due to a mistake or an accident; (2) the motion for new trial sets up a meritorious defense; and (3) the granting of a new trial will not occasion delay or otherwise injure the plaintiff. *Craddock*, 133 S.W.2d at 126. The defendant has the burden to set forth facts that establish all three elements. *Meador v. Meador*, No. 11-17-00235-CV, 2019 WL 3765218, at *1 (Tex. App.—

8

Eastland Aug. 8, 2019, pet. denied) (mem. op.). However, when the first element of the test is established by proof that the defendant was not given notice of a trial setting, the defendant is not required to prove the other elements. *Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005) (per curiam) (noting that, for constitutional reasons, a defendant who establishes that it did not receive notice of the trial setting is not required to prove a meritorious defense); *Midland Funding LLC v. Gonzales*, No. 11-16-00044-CV, 2017 WL 4440198, at *3 (Tex. App.—Eastland Sept. 21, 2017, no pet.) (mem. op.) ("A person who is not notified of a trial setting and consequently suffers a default judgment need not establish a meritorious defense or lack of prejudice to the opposing party to be entitled to a new trial.").

The first *Craddock* element is satisfied when the defendant's factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the plaintiff does not controvert those factual assertions. *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012). However, when the plaintiff controverts the defendant's factual assertions, the issue becomes a fact question for the trial court to determine. *Lynch v. Lynch*, 540 S.W.3d 107, 122 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). "As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court may choose to believe all, none, or part of a witness's testimony." *Utz v. McKenzie*, 397 S.W.3d 273, 279 (Tex. App.—Dallas 2013, no pet.) (quoting *Stein v. Meachum*, 748 S.W.2d 516, 517 (Tex. App.—Dallas 1988, no writ)).

Whether the defendant's failure to appear was intentional or due to conscious indifference is determined based on the knowledge and acts of the defendant. *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (per curiam). Consciously indifferent conduct occurs when "the defendant knew [she] was sued but did not care." *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006) (per curiam). Generally, "some excuse, although not necessarily a good one" will suffice

9

to show that the defendant did not act with conscious indifference. *In re R.R.*, 209 S.W.3d at 115.

A defendant who has filed an answer has "appeared" in the case and placed "in issue" the matters raised in the plaintiff's petition. *Highsmith v. Highsmith*, 587 S.W.3d 771, 777–78 (Tex. 2019) (per curiam). A defendant who has appeared in a case is entitled to notice of a trial setting as a matter of due process. *Id.* at 778 (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988)); *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 813 (Tex. 2012) (per curiam) ("Entry of a post-answer default judgment against a defendant who did not receive notice of the trial setting or dispositive hearing constitutes a denial of due process under the Fourteenth Amendment of the United States Constitution."). Notice may be actual or constructive, so long as it is reasonably calculated under the circumstances to apprise the party of the pendency of the action and to provide an opportunity to present an objection. *Peralta*, 485 U.S. at 84; *In re K.M.L.*, 443 S.W.3d 101, 119–20 (Tex. 2014). In contested cases, Rule 245 of the Texas Rules of Civil Procedure requires "reasonable notice of not less than forty-five days to the parties of a first setting for trial." TEX. R. CIV. P. 245; *see Highsmith*, 587 S.W.3d at 777.

Appellant first argues that there was no or, alternatively, insufficient evidence that she received adequate notice of the May 29, 2018 trial setting. However, during the hearing on the motion for new trial, Appellant admitted that she received by e-mail the letters from Quinney and Nix, that she knew the case was set for trial, and that she did not make any inquiry as to whether the case would go to trial. Appellant also admitted that she was in the courthouse on May 29, 2018, and Deputy Tucker testified that he saw Appellant in the courthouse at the time that the trial was taking place.

Appellant testified during the hearing on the motion for new trial that her failure to appear at trial was a mistake or accident because she believed that

10

Quinney's letter was not "official" and that a court order or "certificate of service" was necessary in order to set the case for trial. Appellant's belief that a court order or a certificate of service was necessary before the case was set for a trial was a mistake of law. *Cf. Mathis*, 166 S.W.3d at 745 (noting that Rule 21a(e) of the Texas Rules of Civil Procedure requires a certificate of service when "a party or attorney of record serves the notice"); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978) (holding that letter to the district clerk in which opposing counsel requested that the case be set for trial on a specific date was sufficient notice to a pro se litigant of the trial setting). A mistake of law may be sufficient to satisfy the first element of the *Craddock* test. *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992). However, not every act of a defendant that could be characterized as a mistake of law is a sufficient excuse. *Id.*; *see also Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003). "Not understanding a citation and then doing nothing following service does not constitute a mistake of law that is sufficient to meet the *Craddock* requirements." *In re R.R.*, 209 S.W.3d at 115.

Appellant's belief that the letter from the court administrator was not "official" followed by Appellant's choice to do nothing to confirm whether the case was set for trial was not a sufficient excuse to satisfy the first *Craddock* element. *See id.*; *Lynch v. Lynch*, 540 S.W.3d 107, 123–24, 126–27 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (holding that, when the defendant had been served with citation by a process server and the trial court could reasonably infer from the evidence that the defendant knew that he had been sued and was required to appear, the defendant's belief that he had received informational copies of the documents and did not have to appear until he was formally served by a peace officer was insufficient to establish first *Craddock* element); *Jaco v. Rivera*, 278 S.W.3d 867, 872 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that a person acts with conscious indifference when she fails to take some action that would appear obvious

11

to a reasonable person under similar circumstances). Therefore, the trial court could have reasonably determined that Appellant acted with conscious indifference to the proceedings when she failed to appear for trial.

Appellant also contends that, even if she received sufficient notice of the May 29, 2018 trial setting, there was no or, alternatively, insufficient evidence that she received adequate notice that the Trust's cross-action would also be heard. Relying on *Harrison v. Gaubert*, No. 01-07-00814-CV, 2009 WL 1424735, at *6 (Tex. App.—Houston [1st Dist.] May 21, 2009, no pet.) (mem. op.), Appellant specifically argues that a default judgment is void if it is taken based on an amended petition that was not served on the defendant in which the plaintiff seeks more onerous relief than that requested in the original petition.

This is not a case where the Trust, without serving Appellant, took a default judgment based on an amended petition that requested more onerous relief than the original petition. Rather, the Trust served Appellant with the cross-action in which it essentially requested the same declarations as the Estate—a determination of who owned the Property and a determination of whether the documents in which Hanson purported to convey some or all of the Property to Mark or to Appellant were valid. *See AAMCO Transmissions, Inc. v. Bova*, 484 S.W.3d 520, 523 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding that an amended petition seeks a more onerous judgment if it exposes the defendant to additional liability). The issue is that the cross-action was filed only eight days before the trial date, raising a concern that Appellant did not have adequate notice that the cross-action would be heard on May 29, 2018.

However, even constitutional arguments, such as a lack of due process, are waived if not raised first in the trial court. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003); *In re R.A.*, 417 S.W.3d 569, 581 (Tex. App.—El Paso 2013, no pet.). Specifically, a party waives a complaint regarding insufficient notice of a trial setting

if the party fails to preserve the complaint. *Abend v. Fed. Nat'l Mortg. Ass'n*, 466 S.W.3d 884, 886 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Mejia v. Sawyer*, No. 05-19-00488-CV, 2020 WL 4344916, at *2 (Tex. App.—Dallas July 29, 2020, no pet. h.) (mem. op.). To preserve a complaint for appellate review, a party (1) must make a timely request, objection, or motion in the trial court that states the specific grounds for the ruling sought, unless the specific grounds are apparent from the context and (2) obtain a ruling from the trial court or object to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a).

In her motion for new trial, Appellant complained that she did not receive notice of the May 29, 2018 trial setting and did not know that the trial had been set. The evidence at the hearing on Appellant's motion for new trial focused on whether Appellant received Quinney's April 3, 2018 letter, Appellant's belief that the letter was not an official notice that the case was set for trial, Appellant's failure to take any steps to clarify whether the case was set for trial, and Appellant's presence in the courthouse on the date of trial. The trial court made findings that Appellant had alleged in the motion for new trial that "she had not received notice of the trial date," that Appellant had actual notice of the trial setting, and that Appellant chose not to appear.

Appellant did not specifically argue in the trial court that she was entitled to a new trial because she received insufficient notice that the Trust's cross-action would be heard on May 29, 2018. Appellant, therefore, failed to preserve this argument for our review. *See id.*; *Templeton Mortg. Corp. v. Poenisch*, No. 04-15-00041-CV, 2015 WL 7271216, at *2–3 (Tex. App.—San Antonio Nov. 18, 2015, no pet.) (mem. op.) (holding that a motion for new trial in which the defendant argued that it did not receive notice of the default judgment hearing did not preserve the complaint that the defendant received inadequate notice of the hearing); *see also In re V.B.*, No. 02-17-00318-CV, 2018 WL 771976, at *3–4 (Tex. App.—Fort Worth

13

Feb. 8, 2018, no pet.) (mem. op.) (holding that party failed to preserve the objection that intervention was filed less than forty-five days before trial because she failed to "timely and specifically object" in her motion for continuance that she had insufficient notice that the intervention was set for trial).

We hold that the trial court did not abuse its discretion when it determined that Appellant did not establish that her failure to appear at trial was not intentional or the result of conscious indifference but was due to an accident or a mistake. Because Appellant failed to establish the first element of the *Craddock* test, the trial court did not abuse its discretion when it denied Appellant's motion for new trial. *See Holt Atherton Indus., Inc. v. Heine*, 835 SW.2d 80, 83 (Tex. 1992). We overrule Appellant's second issue.

In her third issue, Appellant argues that the trial court erred when it rendered judgment because the Estate and the Trust presented no evidence to support their theories of recovery.

In an appeal from a judgment that was rendered after a bench trial, the trial court's findings of fact have the same weight as a jury verdict, and we review the sufficiency of the evidence to support the findings using the same standards as when we review a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When, as in this case, the trial court did not make findings of fact and conclusions of law, "we imply all relevant facts necessary to support the judgment that are supported by evidence." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). We will affirm the trial court's judgment if it can be upheld on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Builders First Source–S. Tex., LP v. Ortiz*, 515 S.W.3d 451, 456 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

An appellant who attacks the legal sufficiency of the evidence to support an adverse finding on which she did not have the burden of proof at trial must

demonstrate that there is a complete absence of evidence of a vital fact or that the evidence to prove a vital fact is no more than a scintilla. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014); *see also Pike v. Tex. EMC Mgmt., LLC*, No. 17-0557, 2020 WL 3405812, at *14 (Tex. June 19, 2020). "The 'test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.'" *W&T Offshore, Inc. v. Fredieu*, No. 18-1134, 2020 WL 3240869, at *9 (Tex. June 5, 2020) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

When we conduct a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every inference in favor of the trial court's finding. *Waste Mgmt.*, 434 S.W.3d at 156; *City of Keller*, 168 S.W.3d at 822. We credit favorable evidence when a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not. *Pike*, 2020 WL 3405812, at *14; *City of Keller*, 168 S.W.3d at 827. We must uphold the judgment if it is supported by more than a scintilla of competent evidence. *W&T Offshore*, 2020 WL 3240869, at *9.

It is the factfinder's role to evaluate the credibility of the witnesses and reconcile any inconsistencies or conflicts in the evidence. *Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018). Generally, the factfinder may believe or disregard all or any part of the testimony of any witness. *Id.* We will not substitute our opinions on credibility for those of the factfinder. *See City of Keller*, 168 S.W.3d at 816–17.

The Estate alleged that the handwritten gift document, the Document of Promise, and the Purchase of Grace Ranch "infer[red] the existence of an executory contract" and that the contract failed to comply with the requirements of Subchapter D of Chapter 5 of the Texas Property Code. The Estate specifically alleged that the executory contract did not contain a notice that informed the purchaser of the condition of a property, did not state either that the contract

15

represented the parties' final agreement and could not be contradicted by evidence of an oral agreement or that there were no oral agreements between the parties, did not contain language that allowed the purchaser to cancel the contract without cause, and was not recorded. *See* PROP. §§ 5.069(a)(3), (d), .072(d), (e) (West 2014), § 5.076(a) (West Supp. 2019). The Estate also alleged that neither Mark nor Appellant had made a payment to the Trust in 2017. The Estate requested that the trial court determine whether there was a valid agreement for Mark to purchase the Property and whether the Estate had an equitable interest in the Property.

In its cross-action, the Trust alleged that the Purchase of Grace Ranch failed because the annual payments of $2,400 were to pay Hanson's debt to Sandra rather than to benefit the Trust and because the agreement provided for the conveyance of trust property to satisfy a nonexistent devise from the individual estate of Hanson. The Trust asserted that the assets and liabilities of the Trust had been commingled with Hanson's assets and liabilities "making the above described events ultra vires and void." The Trust also alleged that Appellant had failed to timely tender the 2017 payment and was in default under the Purchase of Grace Ranch.

As to the handwritten gift document, the Trust alleged that Hanson had attempted to make a gift of assets that belonged to the Trust. The Trust contended that this action by Hanson was ultra vires and void.

On appeal, the Estate and the Trust assert that the trial court did not err when it ordered that the handwritten gift document, the Document of Promise, and the Purchase of Grace Ranch were rescinded because those documents fail to adequately describe the land that was to be conveyed and, therefore, are void under the statute of frauds. A contract for the sale of real property is subject to the statute of frauds. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4) (West 2015). To comply with the statute of frauds, a contract for the sale of real property must sufficiently describe

the property to be conveyed. *Jones v. Kelley*, 614 S.W.2d 95, 99 (Tex. 1981); *see also AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008).

"The statute of frauds is an affirmative defense to breach of contract and renders a contract that falls within its purview unenforceable." *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* BUS. & COM. § 26.01(a); *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). A claim that a contract does not comply with the statute of frauds must be pleaded in the trial court. TEX. R. CIV. P. 94; *Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 792–93 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (holding that plaintiff is required to plead any matter in avoidance, including the statute of frauds, on which it intends to rely); *see also Dynegy*, 422 S.W.3d at 641 (noting that the "party pleading the statute of frauds" had the initial burden to establish the statute's applicability).

The Estate filed a petition and the Trust filed a cross-action in which they sought a determination of the validity of the documents signed by Hanson and of the parties' rights, status, or other legal relations under those documents. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a)–(b) (West 2020). As permitted by the Uniform Declaratory Judgments Act, the Estate and the Trust sought to have the documents construed before Appellant alleged that any breach had occurred. *See id.* § 37.004(b). To assert that the handwritten gift document, the Document of Promise, and the Purchase of Grace Ranch are unenforceable under the statute of frauds, the Estate and the Trust were required to plead and prove the applicability of the statute in the trial court. *See* TEX. R. CIV. P. 94; *Dynegy*, 422 S.W.3d at 641.

Neither the Estate nor the Trust pleaded that the handwritten gift document, the Document of Promise, or the Purchase of Grace Ranch was void pursuant to the statute of frauds or that any of the documents contained an inadequate description of the land to be conveyed. Therefore, they cannot, for the first time on appeal, rely on

17

that theory to support the trial court's judgment, *see Brooks v. Auros Partners, Inc.*, No. 07-18-00354-CV, 2020 WL 1943449, at \*2 (Tex. App.—Amarillo Apr. 22, 2020, no pet.) (mem. op.), and we express no opinion on whether any of the documents comply with the statute of frauds. Rather, we turn to whether the Estate or the Trust offered sufficient evidence to support the trial court's judgment based on the allegations in the petition and in the cross-action. *See Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979) ("A judgment must be based upon pleadings . . . ."); *Lynch*, 540 S.W.3d at 134.

The trial court rescinded three documents—the handwritten gift document, the Document of Promise, and the Purchase of Grace Ranch. The Estate pleaded that the handwritten gift document, the Document of Promise, and the Purchase of Grace Ranch "infer[red] the existence of an executory contract" that did not comply with Subchapter D of Chapter 5 of the Texas Property Code, alleged specific deficiencies in the agreements, and requested that the trial court determine whether Mark had a valid contract to purchase the Property and who holds legal title to the Property. To rescind any document based on the Estate's pleading, the trial court was required to determine (1) that there was an executory contract to which Subchapter D applied; (2) that the contract failed to comply with the requirements of Subchapter D; and (3) that, based on its failure to meet the statutory requirements, the contract was not valid.

Subchapter D applies to a transaction that involves an executory contract for the conveyance of real property that is used or to be used as the purchaser's residence or as the residence of a person related to the purchaser within the second degree of consanguinity. PROP. § 5.062(a). An "executory contract" is a real estate transaction that allows the seller of the property to retain title until the purchaser has paid for the property in full. *Ferrara v. Nutt*, 555 S.W.3d 227, 236 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

Appellant generally contends that the Estate presented no evidence that the "subject documents" involved property used or to be used as the purchaser's residence. However, Appellant's specific argument is that, because Hanson had already given the house and some amount of land surrounding the house to Mark and Appellant, any agreement to convey the remainder of the Grace Ranch was not a conveyance of real property that was used or to be used as the purchaser's residence. This argument can only be directed at the Purchase of Grace Ranch.[3]

The evidence at trial established that, at some point after the Trust purchased the Property, Hanson moved a house onto the Property. According to Christie, Mark did "a lot of work in getting [the] house fixed up where he and his wife could live there." Therefore, there was more than a scintilla of evidence that the house on the Property was Mark and Appellant's residence.

In the handwritten gift document, Hanson purported to convey the house, a garage, and 1.5 acres of the 59.80-acre tract to Mark and Appellant. The parties subsequently disagreed over how much land that Mark and Appellant should receive, and Hanson attempted to revoke the gift. In the Document of Promise, Hanson agreed to retain the entire 59.7-acre tract for a period of three years to allow Mark and Appellant an opportunity to purchase the entire tract. If Mark and Appellant did not purchase the entire tract within three years, Hanson had the right to sell the tract except for 2.19 acres surrounding the house.

---

[3]To the extent that Appellant's reference to the "subject documents" was intended to encompass the Document of Promise, we note that the evidence at trial established that the parties agreed that the Purchase of Grace Ranch superseded the Document of Promise. A second contract will supersede or operate as a novation of the original contract "when the parties to both contracts intend and agree that the obligations of the second contract will be substituted for and operate as a discharge of the obligations of the earlier agreement." *JMW Partners, L.P. v. Northstar Bank of Tex.*, No. 2-09-167-CV, 2010 WL 2331399, at *6 (Tex. App.—Fort Worth June 10, 2010, no pet.) (mem. op.); *see also Chastain v. Cooper & Reed*, 257 S.W.2d 422, 424 (Tex. 1953). Because the parties agreed that the Document of Promise was no longer effective as an agreement to convey the Property, the trial court did not err when it ordered that the Document of Promise was rescinded. Therefore, we overrule Appellant's third issue to the extent that she challenges the recision of the Document of Promise.

Mark and Appellant, however, did not purchase the 59.7-acre tract pursuant to the terms in the Document of Promise. Rather, the parties agreed that the Purchase of Grace Ranch "supersede[d]" the Document of Promise "or any other previous agreements." Pursuant to the Purchase of Grace Ranch, Mark and Appellant had the right to buy the entire 59.80-acre tract. Although the parties noted in the agreement that Hanson had given the improvements on the Property, including "a barn, a trailer, and an 1800 square foot home," to Mark and Appellant as a wedding present, they did not carve out any of the 59.80-acre tract from the agreement and did not state that Mark and Appellant had been given, or already owned, any portion of the real property. Therefore, there is more than a scintilla of evidence that the parties agreed that the Purchase of Grace Ranch included the conveyance of the portion of the Property on which the house was located.

We hold that there was more than a scintilla of evidence that the Purchase of Grace Ranch was an executory contract for the conveyance of real property that was to be used as Mark and Appellant's residence. Therefore, there was more than a scintilla of evidence to support the trial court's implied finding that Subchapter D of Chapter 5 of the Property Code applied to the Purchase of Grace Ranch. However, because the trial court ordered that the Purchase of Grace Ranch was rescinded, it also impliedly found that the Purchase of Grace Ranch failed to comply with the statutory requirements of Subchapter D and that, due to those deficiencies, the agreement was not a valid contract to purchase the Property. In her appeal, Appellant does not argue that the trial court erred when it made either of those determinations.

"It is an appellant's burden to discuss [her] assertions of error, and appellate courts have no duty—or even the right—to perform an independent review of the record and the applicable law to determine whether there was error." *Ihnfeldt v. Reagan*, No. 02-14-00220-CV, 2016 WL 7010922, at *9 (Tex. App.—Fort Worth

20

Dec. 1, 2016, pet. denied) (mem. op.) (citing *Hernandez v. Hernandez*, 318 S.W.3d 464, 466 (Tex. App.—El Paso 2010, no pet.)); *see also Windsor v. Round*, 591 S.W.3d 654, 670 (Tex. App.—Waco 2019, pet. denied); *Liles v. Contreras*, 547 S.W.3d 280, 296 (Tex. App.—San Antonio 2018, pet. denied). To determine that the trial court erred when it found that the Purchase of Grace Ranch failed to comply with the requirements of Subchapter D and that the Purchase of Grace Ranch was not a valid contract, we would have to independently research the law related to executory contracts and apply that law to the facts of this case, all without any assistance from Appellant. However, we are not permitted "to construct an argument for appellant and engage in research to support the argument." *See Liles*, 547 S.W.3d at 296; *see also State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989) (per curiam) (holding that appellate court erred when it reversed the judgment based on arguments that the appellant did not raise).

We hold that there was more than a scintilla of evidence that the Purchase of Grace Ranch was an executory contract for the purchase of real property that was Mark and Appellant's residence. Therefore, we overrule Appellant's third issue as to the Purchase of Grace Ranch and affirm the trial court's judgment that the Purchase of Grace Ranch was rescinded. Because the trial court's judgment can be affirmed based on the Estate's request for relief pursuant to Subchapter D, we need not address either the Estate's allegation that Appellant was in default under the Purchase of Grace Ranch or any of the grounds for recision of the Purchase of Grace Ranch that were raised in the Trust's cross-action. *See* TEX. R. APP. P. 47.1; *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 650 (Tex. App.—Dallas 2015, no pet.) (noting that judgment could be affirmed on any independent ground that was fully supported by the evidence).

The handwritten gift document is not an executory contract for the purchase of real property. *See Ferrara*, 555 S.W.3d at 236. Therefore, Subchapter D does

not apply to the handwritten gift document, and the trial court's order that the handwritten gift document was rescinded cannot be based on the Estate's petition for declaratory relief. We, therefore, turn to whether the trial court properly ordered that the handwritten gift document was rescinded based on the Trust's cross-action.

The Trust pleaded that Hanson had improperly made a gift of Trust assets and had signed an "instrument or instruments" "in a manner that was outside the capacity or authority conferred by the Trust or by the laws of the State of Texas." The Trust requested a declaration "that the instrument or instruments in question are invalid." Based on the Trust's pleadings, the trial court could have rescinded the handwritten gift document if it determined that the Trust was prohibited from making a gift or that Hanson did not have authority to make the gift of assets that belonged to the Trust to Mark and Appellant.

At trial, the Trust's counsel admitted that the Trust was allowed to make a gift under certain circumstances. However, the record does not contain any document that sets out the circumstances under which the Trust was permitted to make a gift or under which Hanson had authority as trustee to sign a document in which she purported to make a gift of assets that belonged to the Trust. Further, Hanson did not testify about her authority, as trustee, to sign documents in which the Trust purported to give assets to either Mark or Appellant. Therefore, there was no evidence that Hanson did not have authority to give assets that belonged to the Trust to Mark or Appellant or that Hanson signed the handwritten gift document outside her capacity or authority as trustee. The trial court, therefore, could not have determined, based on the allegations pleaded by the Trust, that the handwritten gift document was void and should be rescinded.

We hold that there was no evidence to support the recision of the handwritten gift document based on either the Estate's petition or the Trust's cross-action. Therefore, we sustain Appellant's third issue to the extent that she complains that

22

the trial court erred when it ordered that the handwritten gift document was rescinded.

*This Court's Ruling*

We reverse the trial court's judgment to the extent that it ordered that the handwritten gift document was rescinded and remand to the trial court for further proceedings the issue of whether the handwritten gift document is valid. We affirm the trial court's judgment in all other respects.

KEITH STRETCHER

JUSTICE

September 11, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[4]

Willson, J., not participating.

---

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.