

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00078-CV

EDWARD COX AND THERESA COX, Appellants

V.

FRANKLIN MICAH MAY VANDERBURG, PREMIER LAND, LLC,
AND CECILIA GUTIERREZ DE CRUZ, Appellees

On Appeal from the 62nd District Court
Hopkins County, Texas
Trial Court No. CV43881

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

Edward and Theresa Cox filed a voluntary nonsuit of their claims against two defendants, Premier Land Liquidators, LLC (Premier), and Cedar Creek Preservation, LLC (Cedar Creek). On appeal, they argue that the trial court abused its discretion by dismissing their claims with prejudice after it found that the nonsuit was taken for an improper purpose. Because we find no abuse of discretion in the trial court's ruling, we affirm the trial court's dismissal of the Coxes' claims with prejudice.[1]

## I.     Introduction and Summary of the Trial Court Proceedings

### A.     General Overview of the Litigation

On October 27, 2018, Cedar Creek held a real estate sales event marketed by Premier. Premier arranged for a sixty-car caravan to carry prospective real estate purchasers to view several of Cedar Creek's properties in and around Sulphur Springs, Texas. Premier contacted the Hopkins County Sheriff's Office (HCSO) to provide a police escort for the caravan. The HCSO instructed Premier's corporate representative, Jim Deal, to have the caravan drivers stay close to the car in front of them and drive through red lights in order to maintain the caravan. Deal radioed those instructions to the drivers.

Franklin Vanderburg was an independent contractor hired by Premier to drive one of the caravan vehicles. The Coxes were passengers in Vanderburg's vehicle. Their vehicle was hit by another car driven by Cecilia Gutierrez De Cruz when Vanderburg drove through a red light. Vanderburg admitted that De Cruz had the green light but asserted that he proceeded through the

---

[1] After the nonsuit, the Coxes re-filed their claims in a new lawsuit. In companion cause number 06-21-00015-CV, the Coxes argued that the trial court erred in finding that the newly filed suit was barred by res judicata.

intersection anyway at the instruction of the HCSO. The Coxes sued De Cruz, Vanderburg, Premier, and Cedar Creek to recover damages for their personal injuries sustained in the accident. They eventually settled with Vanderburg and De Cruz and proceeded with their claims against Premier and Cedar Creek.

During the course of the continuing litigation with Premier and Cedar Creek, the Coxes nonsuited Cedar Creek. Afterward, the Coxes took Deal's deposition, and the trial court's deadlines to amend pleadings and move for summary judgment expired. Then, without obtaining leave of court, the Coxes filed their tenth and eleventh amended petitions bringing Cedar Creek back into the lawsuit. After being brought back into the litigation a second time, Cedar Creek (and Premier) moved to strike the Coxes' tenth and eleventh amended petitions because they were untimely filed, moved to strike the opinions of Sulphur Springs Police Officer Terry Miller, who investigated the accident, because he was not qualified to give those opinions, and moved for summary judgment. The trial court granted Cedar Creek's and Premier's motions to strike Miller's opinions and set a hearing on the defendants' summary judgment motions. During the summary judgment hearing, the trial court indicated its intent to grant Premier's and Cedar Creek's motions to strike the Coxes' tenth and eleventh amended petitions. At that point, the Coxes nonsuited Cedar Creek a second time—which was less than forty-five days before trial—and filed a new lawsuit naming the same parties via a petition that was worded the same way as the stricken eleventh amended petition, with the exception of one footnote. [2]

---

[2]The footnote read,

Plaintiffs originally filed suit on December 3, 2018. The case was assigned to Judge Biard. *See Edward Cox and Theresa Cox v. Franklin Micah May Vanderburg*, Cause No. CV43881; In the 62nd Judicial District Court of Hopkins County, Texas. Plaintiffs subsequently non-suited that

## B.    Premier and Cedar Creek Moved for Sanctions

After the Coxes nonsuited Cedar Creek the second time, both Premier and Cedar Creek filed motions to be adjudicated prevailing parties and motions for sanctions. Premier and Cedar Creek argued that the nonsuit and the new lawsuit were filed to circumvent the trial court's ruling striking the tenth and eleventh amended petitions. They also alleged that the nonsuit was taken to avoid the discovery deadline in the first lawsuit and because it would allow the Coxes to serve additional interrogatories, obtain more discovery, and designate a witness to replace Miller in the newly filed suit. The motions pointed out that the nonsuit was filed less than forty-five days before trial after close to two years of litigation and would cause unnecessary delay and increased litigation costs.

At the hearing on the motion for sanctions, Cedar Creek argued that the Coxes knew about their involvement well before Deal's deposition and that the argument that Deal's testimony "surprised them or changed [something] that required new direct claims or [a] new basis for claims [wa]s at the very least disingenuous, but in this case [they] believe[d] bad faith." The Coxes' attorney filed an affidavit to their opposition to the sanctions motions admitting that his purpose in taking the second nonsuit was to overcome the trial court's order striking the Coxes' eleventh amended petition. The trial court found that the Coxes' counsel acted in bad faith and deemed the nonsuit to be with prejudice. The trial court found that Premier and Cedar

---

case without prejudice, and within the statute of limitations. No counterclaims were pending at the time of the non-suit. If this lawsuit is assigned to the 8th Judicial District Court, Plaintiffs agree to an intra-county transfer, in order to have this case heard by Judge Biard. Further, Plaintiffs agree to have Cedar Creek's motion for summary judgment, which was previously and fully briefed, re-noticed for an oral hearing at a time convenient for the Court and counsel.

4

Creek were prevailing parties and ordered the Coxes to pay costs.  Because this case involves a "death penalty" sanction, we will recite the procedural facts leading to that decision in detail.

## II.	Factual and Procedural Background

### A.	The Parties' Pleadings

#### 1.	Claims and Defenses

The Coxes alleged that Vanderburg was "operating a vehicle in the furtherance of a mission for the benefit of Premier and/or Cedar Creek" and was subject to their control or, in the alternative, held himself out as an employee or agent of Premier or Cedar Creek.  The Coxes also alleged that Vanderburg's negligence was imputed to Premier and Cedar Creek "under the doctrine of *respondeat superior* and/or agency law."  Premier and Cedar Creek answered and asserted that the Coxes' injuries were caused by third parties, that there were intervening superseding causes for the injuries, and that Theresa failed to mitigate her injuries by wearing a seat belt.  Premier denied that Vanderburg was its agent or employee, that he was working on its behalf, or that it owned the vehicle being driven by Vanderburg.  Premier also argued that it could not be held liable in the capacity in which it was sued because it was acting only as Cedar Creek's marketing member.

#### 2.	The Coxes' Motions for Summary Judgment and Partial Summary Judgment and Premier's Response

The Coxes moved for summary judgment against Premier and for partial summary judgment on the issue of *respondeat superior*.  Their motion was countered by Vanderburg's deposition testimony, discovery responses, an affidavit by Deal, and the limited-liability company agreement of Cedar Creek showing that Premier was its marketing member.  Because

5

the timing of the Coxes' knowledge of Cedar Creek's involvement is at issue, we discuss the evidence attached to Premier's summary judgment response below.

### a.      Vanderburg's Deposition

In his November 21, 2019, deposition, Vanderburg testified that Premier sent him a check for the job and paid for the rental car he used to drive the Coxes. He also said that, while the other caravan drivers signed acknowledgement forms stating that they were courtesy shuttle drivers for Cedar Creek, he never signed the acknowledgement form for this event, even though he had done so in the past for other events. The form Vanderburg was supposed to sign stated,

> I have agreed to serve for one day as a Courtesy Shuttle Driver for Cedar Creek Preservation, LLC, in connection with its one day only offering to sell portions of its land . . . . scheduled for Saturday, October 27, 2018. . . . I will be furnished a radio as a means of communication . . . . I will use this radio to maintain contact with officials of Cedar Creek Preservation, LLC.

### b.      Cedar Creek's Responses to Requests for Admissions and Deal's Affidavit

In its January 3, 2020, responses to requests for admissions, Cedar Creek denied that Vanderburg was an independent contractor for Premier and admitted that he was Cedar Creek's independent contractor. Cedar Creek also denied that Vanderburg was on a mission for the benefit of Premier or was subject to their control but admitted that he was "independently contracted to transport perspective purchasers to view real estate offered for sale by Cedar Creek." On January 13, Deal executed an affidavit stating that Premier was a marketing member of Cedar Creek and owned no interest in the land Cedar Creek was offering for sale and that all expenses fronted by Premier for the land sales event, including payment to Vanderburg, were reimbursed by Cedar Creek. Deal also swore that Premier had no contract with Vanderburg. As

6

for the instructions to the caravan drivers, Deal affirmed, "[W]hen I met with the [HCSO] officers I was told to relate to the [caravan drivers] that they should turn on their hazard lights, keep close to the caravan vehicle in front of them, and follow the caravan vehicles in front of them if there were traffic lights."

### c. The Trial Court Denied the Coxes' Summary Judgment Motions and the Coxes Filed Their Eighth Amended Petition

On January 27, 2020, the trial court heard and denied the Coxes' motion for summary judgment against Premier, their motion for partial summary judgment on the issue of *respondeat superior*, and their motion to strike Premier and Cedar Creek's retained expert. On the next day, the Coxes filed their eighth amended petition. The petition again sought to impute Vanderburg's negligence to Premiere and Cedar Creek, contained a complaint of negligent entrustment of a vehicle to an incompetent or reckless driver, and claimed that Premier and/or Cedar Creek were liable for Deal's "irresponsible and incorrect" advice to Vanderburg to drive through red lights because they had a police escort.[3]

### B. The Trial Court Set Critical Deadlines

The trial court's original docket control order set February 17, 2020, as the deadline to amend or supplement pleadings. The Coxes filed a motion for continuance on February 21, and after a hearing in which Premier's counsel said she "would rather not extend . . . pleadings dates . . . since [they had] been pending for over a year," the trial court granted the motion for continuance but did not change the February 17 pleading deadline. Instead, it altered the

---

[3]On April 21, 2020, after the deadline for filing pleadings, the Coxes filed a ninth amended petition that dropped Vanderburg and De Cruz as defendants and included the same claims against Premier and Cedar Creek that were filed in the eighth amended petition.

deadline for discovery to May 27, 2020, altered the summary judgment motion deadline to June 12, and set the case for trial on October 19.

### C. On the Day Before the Discovery Deadline, the Coxes Nonsuited Cedar Creek and then Deposed Deal

The depositions of several members of the HCSO were favorable to Premier and Cedar Creek. Lieutenant Amanda Suzanne Weatherford explained the HCSO's procedure for clearing an intersection for a caravan, stated that deputies dictate how the caravan will proceed, and testified that deputies can instruct drivers to go through intersections even if there is a red light and that it is appropriate for drivers of a caravan to do so. Sergeant Scott Jeffrey Davis, William Kelley Wise, and Alvin Joel Jordan provided similar testimony and said it would be lawful for a driver to go through a red light if instructed by a police escort during a caravan.

On May 6, 2020, the Coxes noticed their intent to take the deposition of Premier's corporate representative, Deal, on June 3. Then, on May 26, 2020, the day before the discovery deadline, the Coxes filed a notice of nonsuit without prejudice as to Cedar Creek, which the trial court granted. In his deposition, during which Cedar Creek was no longer a participating party, Deal testified to similar facts that were included in his affidavit, including that Premier paid the caravan drivers and that Cedar Creek later reimbursed them for those expenses. Deal also testified that he met with HCSO officers before the caravan started to go over the details, that it was the HCSO that made the decision to move forward with the caravan, that the drivers were instructed to follow the car in front of them closely, and that the HCSO said they would guide them through the intersections. Deal also testified that Vanderburg was operating the vehicle on behalf of and for the benefit of Cedar Creek and that he was subject to Cedar Creek's control.

8

**D.    The Coxes Brought Cedar Creek Back into the Lawsuit Through Late-Filed Petitions**

Citing to the portion of Deal's testimony speaking to Cedar Creek's benefit and control—and without obtaining leave of court—the Coxes filed a tenth amended petition on June 26 and an eleventh amended petition on July 16, bringing Cedar Creek back into the lawsuit. Those petitions included new claims, including that Deal failed to check to see how many officers would be escorting the caravan and that the defendants failed to provide a safe escort or enough manpower for the caravan.

**E.    Defendants' Responses to the Coxes' Tenth and Eleventh Amended Petitions**

**1.    Motions to Strike**

Both Premier and Cedar Creek filed motions to strike the tenth and eleventh amended petitions. The motions to strike noted that those petitions were filed well after the trial court's deadline, contained new allegations, and alleged facts the Coxes knew were false—including that it was the HCSO, not Premier and Cedar Creek, that instructed the caravan drivers to drive through the red lights. When the Coxes replied that Deal's deposition testimony provided new evidence of Cedar Creek involvement sufficient for the trial court to grant leave to amend, Premier and Cedar Creek responded that the Coxes had known of Cedar Creek's involvement well before it had nonsuited them, as shown by the summary judgment evidence Premier had attached in response to the Coxes' motion for summary judgment.

**2.    Motions to Exclude the Investigating Officer's Opinions**

Premier and Cedar Creek also moved to exclude certain opinions of the Coxes' key witness, Miller, contained in his accident report. In his report, Miller said that he placed

Vanderburg at fault for the accident because he had admitted to going through a red light based on Section 544.004 of the Texas Transportation Code, which says, "The operator of a vehicle or streetcar shall comply with an applicable official traffic-control device placed as provided by this subtitle unless the person is: . . . otherwise directed by a traffic officer, police officer, or escort flagger." TEX. TRANSP. CODE ANN. § 544.004(a)(1) (Supp.). However, Miller testified that he did not see police escorts and was wholly unaware that Vanderburg was part of a caravan that was escorted by the HCSO. Miller also opined that an officer had to ensure that traffic was stopped and that the caravan driver was visible before proceeding through the intersection.

Defendants argued that Miller's accident report contained hearsay, that Miller was not qualified as an accident reconstructionist, and that his opinions were unreliable because he did not consider all the relevant factors surrounding the collision at the time of his investigation. They also argued that Miller could not testify about the legal effect of Section 544.004 on the facts of this case.

### 3. Motion to Quash Cedar Creek's Corporate Representative's Deposition

Cedar Creek also moved to quash the deposition of its corporate representative because the discovery deadline had expired. It also requested leave to file its own traditional and no-evidence motions for summary judgment against the Coxes. In its motion for leave, Cedar Creek alleged, "As a result of Plaintiffs' strategic non-suit without prejudice, counsel for Cedar Creek lost standing to participate" in a hearing, "in the critical deposition of" Deal, "a corporate representative and in the critical deposition of Defendants' jointly designated expert." Cedar Creek argued that its counsel "was also strategically barred from filing a motion for summary

10

judgment in accordance with the Court's dispositive motion deadline." As a result, Cedar Creek argued that it should be permitted to file a summary judgment motion arguing that the Coxes had no evidence that Cedar Creek was vicariously liable for Vanderburg, no evidence that Vanderburg was negligent, no evidence of negligent entrustment because there was nothing to show that Cedar Creek owned the vehicle, and no evidence of negligence per se under Section 544.004 of the Texas Transportation Code. Cedar Creek also argued that De Cruz's negligence was the cause of the accident. The trial court granted Cedar Creek leave to file its traditional and no-evidence motions for summary judgment, and Premier joined in and adopted those motions.

F.   **The Trial Court Granted Cedar Creek's Motion to Quash Its Corporate Representative's Deposition, and the Trial Court Reserved Ruling on Defendants' Motions to Strike the Tenth and Eleventh Amended Petitions**

On August 11, the trial court heard Premier's and Cedar Creek's motions to strike the tenth and eleventh amended petitions. Premier and Cedar Creek argued that they were surprised by the late-filed petitions because they alleged new theories of negligence and argued that they were prejudiced by those pleadings because they did not have the ability to designate expert witnesses to address the new allegations since the discovery deadline had expired. Even though the trial court reserved its ruling on the motion to strike the petitions, it granted Cedar Creek's motion to quash the deposition of its corporate representative and the motion to exclude Miller's opinions in the police report and his testimony about Section 544.044 of the Texas Transportation Code.

**G.** **At the Subsequent Hearing on Defendants' Summary Judgment Motions, the Coxes Nonsuited Cedar Creek for the Second Time**

On September 15, the trial court heard Cedar Creek and Premier's joined summary judgment motions and sustained several objections to the evidence the Coxes had attached to their response to the summary judgment motions. When defense counsel mentioned the pending motions to strike the tenth and eleventh amended petitions, the trial court said, "I thought I granted that at the hearing, but maybe I didn't. . . . I think I had struck those, but there was a piece of the testimony that I was going to go back and look, but I'll go back and look at my notes." Cedar Creek argued that, if the trial court was going to strike the late-filed petitions, there would be no claims against it since it was previously nonsuited and the petitions filed before the pleadings deadline did not include Cedar Creek as a party. Then, the following transpired:

> [BY THE COXES]: Okay. Well, Your Honor -- if that's going to be the case, Your Honor, then Plaintiffs would consider non-suiting all parties at this time and all claims, and I will replead it. We will refile it before the statute of limitations.
>
> [BY CEDAR CREEK]: Your Honor --
>
> THE COURT: I understand --
>
> [BY THE COXES]: Plaintiffs are allowed to take a non-suit at any given time.
>
> THE COURT: . . . but not much I can do.
>
> [BY CEDAR CREEK]: Actually, if it's --
>
> (Simultaneously speaking)

[BY THE COXES]:  -- the law -- I'm sorry.  On the record right now, Your Honor, as a -- with respect to the Edward and Theresa Cox, they non-suit.  They will take a non-suit without prejudice against all parties in the case.

[BY CEDAR CREEK]:  And, Your Honor, actually, the Court does have the authority under Texas law if a party -- if a party is non-suiting on the pending of -- during a pending Motion for Summary Judgment has authority to consider it and issue a ruling.  And then we could address that issue of non-suit later on.  Because acting like this is subject to sanctions and we can file --

THE COURT:  I had this come up when I was second year as a judge and it -- I threw a fit over it because I thought it was gameless, and I went to a conference, and I asked every senior judge I could, and everybody said you don't have an option, so I'm going to go with that.

[BY THE COXES]:  Thank you. . . .

As a result, less than forty-five days before trial, the Coxes nonsuited all claims against Premier and Cedar Creek, without prejudice.[4]

### H.    The Coxes Filed a New Lawsuit Via a Petition that Was Worded Like Their Previous Eleventh Amended Petition, and Premier and Cedar Creek Moved for Sanctions

On September 18, the Coxes filed a new lawsuit in the same court via a petition that was worded like the late-filed eleventh amended petition.  Premier and Cedar Creek filed motions to be adjudicated prevailing parties in the original suit and for sanctions.  Premier and Cedar Creek argued that the new lawsuit was filed to avoid the trial court's ruling striking the tenth and eleventh amended petitions and to avoid the discovery deadline because it would allow the Coxes to serve additional interrogatories, obtain more discovery, and designate a witness to replace Miller.  The motions pointed out that the nonsuit was filed less than forty-five days

---

[4]After the nonsuit, the trial court signed an order on October 26 granting the motions to strike the tenth and eleventh amended petitions.

13

before trial after almost two years of litigation and would cause unnecessary delay and increased litigation costs.

### 1. Defendants' Arguments

Premier and Cedar Creek argued that the nonsuit was taken after the trial court entered unfavorable rulings, including sustaining several objections to the Coxes' summary judgment evidence. In light of the trial court rulings, Premier and Cedar Creek asserted that the Coxes' nonsuit was taken to avoid an unfavorable decision on the merits and was filed for an improper purpose. As a result, they argued that the nonsuit should be declared with prejudice and that they should be found to be prevailing parties. Premier and Cedar Creek moved the trial court to grant sanctions under its inherent authority and under Chapter 10 of the Texas Civil Practice and Remedies Code. The motions listed several sanctions, including monetary sanctions, as an alternative to dismissal of the Coxes' claims with prejudice.

### 2. The Coxes' Reply Argument: Plaintiffs' Counsel Admitted to Nonsuiting Cedar Creek to Overcome the Trial Court's Order Striking the Coxes' Tenth and Eleventh Amended Petitions

In response, the Coxes argued that there was a presumption that their nonsuit was filed in good faith and that they were not trying to avoid the motion for summary judgment but agreed to have that motion reheard. The Coxes attached an affidavit from their counsel that admitted that he had made a strategic decision to nonsuit the claims after the trial court's ruling on the motion to strike the tenth and eleventh amended petitions. Counsel wrote, "Shortly after the Court informed the parties that it had granted the motion to strike and that the case would be continued,

14

I announced to the Court that Plaintiffs were non-suiting all claims against Premier and Cedar Creek without prejudice." Counsel continued,

> I did so because the deposition of Jim Deal, Premiere's corporate representative, and the Hopkins County Sheriff's officials revealed additional evidence supporting Plaintiffs' negligence and negligence *per se* claims against Premier and Cedar Creek. I determined that making Plaintiffs' pleadings and negligence and negligence *per se* claims track the evidence uncovered was important enough that if the Court was not going to permit the amendment, I would nonsuit the claims so that I could make the allegations in a new lawsuit.

### 3. The Trial Court Granted Defendants' Sanctions Motions

At the hearing on the motions for sanctions, Cedar Creek argued that the Coxes knew about their involvement well before Deal's deposition and that the argument that Deal's testimony "surprised them or changed [something] that required new direct claims or [a] new basis for claims [wa]s at the very least disingenuous, but in this case [they] believe[d] bad faith." The trial court agreed, found that the Coxes' counsel acted in bad faith, and deemed the nonsuit to be with prejudice. The trial court found that Premier and Cedar Creek were prevailing parties and ordered the Coxes to pay costs.

### I. The Trial Court Entered Findings of Fact and Conclusions of Law

On October 28, the trial court entered the following findings of fact and conclusions of law:

1. The Court entered a Docket Control Order on July 10, 2019 which established a deadline for amendment or supplementation of pleadings of February 17, 2020.

2. Plaintiffs nonsuited Defendant Cedar Creek Preservation, LLC without prejudice on May 26, 2020.

15

3.      While Defendant Cedar Creek Preservation, LLC was non-suited from the case, the depositions of Defendant Premier Land Liquidators, LLC's Corporate Representative and Defendants' jointly designated expert, Dr. Stephen Ozanne took place. The Court-ordered dispositive motion deadline also passed during this period.

4.      On June 26, 2020, Plaintiffs filed their Tenth Amended Petition against Defendants, re-adding Defendant Cedar Creek Preservation, LLC. On July 16, 2020, Plaintiffs filed their Eleventh Amended Petition against Defendants. Both of these Petitions added claims against Defendants. Plaintiffs did not obtain leave of court to amend pleadings after the deadline.

5.      Defendant Cedar Creek Preservation, LLC filed Traditional and No Evidence Motions for Summary Judgment on all claims filed by Plaintiffs.

6.      Defendant Premier Land Liquidators filed a Joinder in Defendant Cedar Creek Preservation, LLC's Motions for Summary Judgment. Plaintiffs filed no objection to this Joinder.

7.      Defendants filed a Joint Motion to Strike Plaintiffs' Tenth and Eleventh Amended Petitions. The Court granted this Motion and struck Plaintiffs' Tenth and Eleventh Amended Petitions on the basis that said pleadings were untimely per the Court's Docket Control Order.

. . . .

9.      Defendant Cedar Creek Preservation, LLC filed objections to Plaintiffs' summary judgment evidence.

. . . .

11.     A hearing on Defendant Cedar Creek Preservation, LLC's Motions for Summary Judgment was held on September 15, 2020. Prior to hearing the Motions, the Court ruled on Defendant Cedar Creek Preservation, LLC's Objections to Plaintiffs' summary judgment evidence, sustaining objections to portions of the testimony of James Deal, portions of the testimony of Corporal Terry Miller, the narrative and causation opinions contained in the accident report prepared by Corporal Miller, and Plaintiffs' submission of their pleadings as evidence. . . . During this hearing, the Court also announced that it had granted Defendants' Motion to Strike Plaintiffs' Tenth and Eleventh Amended Petitions. Following the Court's rulings on Defendant Cedar Creek Preservation, LLC's Objections

16

to Summary Judgment Evidence, the Court began to hear argument on the summary judgment motions. During counsel for Cedar Creek Preservation, LLC's argument, counsel for Plaintiffs, Mr. Jason Webster, announced to the Court that Plaintiffs nonsuited without prejudice all claims against both Cedar Creek Preservation, LLC and Premier Land Liquidators, LLC.

12. Following the verbal nonsuit, Plaintiffs filed a written Notice of Nonsuit on September 15, 2020.

13. On September 18, 2020, Plaintiffs re-filed suit against Defendants, also in the 62nd Judicial District of Hopkins County, Texas under Cause No. CV44453. The Original Petition filed against Defendants in Cause No. CV44453 contains the same claims and allegations against Defendants as the Plaintiffs' Eleventh Amended Petition, which had been struck as untimely in this suit.

14. On September 29, 2020, Defendants filed their Joint Motion to Adjudicate Defendants as Prevailing Parties and for Sanctions against Plaintiffs and their counsel, Jason Webster.

15. On October 8, 2020 Plaintiffs and their counsel filed a Response to Defendants' Joint Motion. In support of this Response, Plaintiffs' Counsel, Jason Webster, submitted an affidavit in which he states under oath that he nonsuited so that he could make Plaintiffs' pleadings track the evidence uncovered in the case, which he had been prohibited from doing by the Court's Order striking Plaintiffs' Tenth and Eleventh Amended Petitions.

16. Plaintiffs' counsel's claim that the need to file their Tenth and Eleventh Amended Petitions arose from newly uncovered evidence from the depositions of Defendant Premier Land Liquidators, LLC's corporate representative and the officers of the Hopkins County Sheriff's department was not substantiated and was, in fact, refuted by . . . the corporate representative[s] . . . affidavit in response to Plaintiffs' No Evidence Motion for Summary Judgment on Defendants' Affirmative Defenses on January 13, 2020, before the pleading deadline, which contained the same testimony later provided in his deposition, and Defendant Premier Land Liquidators, LLC had responded to written discovery before the pleading deadline with the same evidence as later testified to by the corporate representative in his deposition. There was further no evidence that Plaintiffs ever attempted to depose the officers of the Hopkins County Sheriff's Department prior to the pleading deadline, although Defendants

17

had identified the deputies as responsible third parties in response to Request for Disclosure and Defendant Premier Land Liquidators, LLC had filed a Motion to Designate the officers as responsible third parties on December 10, 2019, over two months prior to the pleading deadline.

17.     Both direct and circumstantial evidence establish that Plaintiffs' counsel, Jason Webster, acted in bad faith when he nonsuited Plaintiffs' claims. Counsel acknowledged that his purpose for nonsuiting and re-filing was to plead claims which had been struck by this Court for his non-compliance with the Court's Docket Control Order.

The trial court's conclusions of law include the following:

1.     Plaintiffs nonsuited in order to avoid an unfavorable decision on the merits on Defendant Cedar Creek Preservation, LLC's Motions for Summary Judgment.

2.     Plaintiffs nonsuited in order to avoid the Court's evidentiary rulings regarding evidence from Corporal Terry Miller and Plaintiffs' other cited summary judgment evidence.

3.     Defendant Cedar Creek Preservation, LLC's Motions for Summary Judgment were also dispositive of Plaintiffs' claims against Defendant Premier Land Liquidators, LLC because the motions sought judgment on elements common to Plaintiffs' causes of action against Defendant Premier Land Liquidators.

4.     Premier Land Liquidators, LLC's Joinder in Defendant Cedar Creek Preservation, LLC's Motions for Summary Judgment was timely and proper. Further, the Court concludes that Plaintiffs waived any objection to this joinder.

5.     The Court was likely to grant Defendant Cedar Creek Preservation, LLC's Motions for Summary Judgment.

6.     Plaintiffs nonsuited in order to avoid this Court's ruling striking Plaintiffs' Tenth and Eleventh Amended Petitions.

       . . . .

8.     Plaintiffs nonsuit was filed for an improper purpose, specifically to interfere with the Court's ability to decide questions of fact, questions of law, and control the management of its docket, and sanctions pursuant to

18

Chapter 10 of the Texas Civil Practice & Remedies Code for filing a pleading for an improper purpose are warranted.

9. The Court finds that Plaintiffs' nonsuit and refiling against Defendants will cause unnecessary delay and will needlessly increase the cost of litigation as Defendants will be required to file responsive pleadings in the new litigation.

10. The Court finds that the totality of circumstances demonstrate that Plaintiffs' counsel acted with willful ignorance of the law and facts applicable to the case.

11. Plaintiffs' counsel, Jason Webster, acted in bad faith when he nonsuited Plaintiffs' claims. Counsel acknowledged that his purpose for nonsuiting and refiling was to plead claims which had been struck by this Court for his noncompliance with the Court's Docket Control Order. The Court finds this to be intentional conduct to deliberately circumvent this Court's Orders.

12. The Court further took judicial notice of the Court's file in this matter. The Court finds that this case had been pending for over twenty-one months at the time of Plaintiffs' nonsuit on September 15, 2020. At the time of the nonsuit, Plaintiffs most recent pleadings had been struck, evidentiary rulings unfavorable to the Plaintiffs had been entered, and dispositive motions were being heard which would potentially produce an unfavorable ruling on the merits. Considering the timing of the nonsuit and the course of conduct in this case, including eleven amended pleadings, pleadings filed without leave and without compliance with the docket control order, a previous nonsuit without prejudice of Defendant Cedar Creek Preservation, LLC only to sue them again approximately one month later and a claimed basis for the need to file the tenth and eleventh amended petitions which is unsupported by the evidence, the Court finds that the actions of Plaintiffs' counsel give rise to an inference that the nonsuit and re-filing were done willfully and in bad faith.

13. Although lesser sanctions were considered, including awarding attorney's fees or other monetary sanctions and/or imposing conditions on the prosecution of the re-filed lawsuit in Cause No. CV44453, Plaintiffs' counsel argued against the imposition of any conditions on the second suit and the Court finds that there is no lesser sanction which would both address the specific conduct in this case, avoiding a decision on the merits and circumventing a prior Order, and which would be effective.

19

14. The Court finds that dismissal with prejudice is further warranted as Plaintiffs' nonsuit was to avoid a dispositive motion which, when granted, would have resulted in dismissal on the merits of this case.[5]

The Coxes filed this appeal.

## III.   Standard of Review

"Dismissal with prejudice, rather than without prejudice, is one form of sanctions because it precludes any hearing of the claims on the merits." *Messina v. Messina*, No. 01-07-00277-CV, 2008 WL 2854191, at *2 (Tex. App.—Houston [1st Dist.] July 24, 2008, pet. denied) (mem. op.). Here, Premier and Cedar Creek moved for the trial court to declare the nonsuit with prejudice as a sanction under Chapter 10 of the Texas Civil Practice and Remedies Code or its inherent authority. The trial court cited Chapter 10 as the basis for the sanction in its findings of fact and conclusions of law.

"We review the imposition of sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code . . . for an abuse of discretion." *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 183 (Tex. App.—Texarkana 2011, no pet.) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)). Here, the trial court concluded that the Coxes nonsuited their claims to avoid an unfavorable ruling, which is a question of fact that we also review for abuse of discretion. *See Northside Pharmacy, LLC v. AMJ Inv., LLC*, No. 14-19-00094-CV, 2021 WL 330067, at *1 (Tex. App.—Houston [14th Dist.] Feb. 2, 2021, no pet.) (mem. op.); *Lusk v. Osorio*, Nos. 14-17-01011-CV, 14-18-00522-CV, 2019 WL 3943195, at *6 (Tex. App.—Houston [14th Dist.] Aug. 20, 2019, no pet.) (mem. op.). "Under

---

[5]The Coxes challenged findings of fact seven, eleven, and fifteen through seventeen and conclusions of law one through seven, eleven, and twelve.

this standard, courts view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action." *Dike*, 343 S.W.3d at 183 (citing *In re Liu*, 290 S.W.3d 515, 519 (Tex. App.—Texarkana 2009, orig. proceeding)). "An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id.* (quoting *Low*, 221 S.W.3d at 614). "A trial court abuses its discretion in awarding sanctions only if the order is based on an erroneous assessment of the evidence or the law." *Id.*

"Chapter 10 provides for an award of sanctions when a party shows . . . that the pleading or motion was brought for an improper purpose." *Mobley v. Mobley*, 506 S.W.3d 87, 95 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 10.001; *Low*, 221 S.W.3d at 614–15). An improper purpose includes "to harass or to cause unnecessary delay or needless increase in the cost of litigation." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(1). "Chapter 10 specifies that one of the aims for imposition of sanctions for the filing of frivolous or groundless pleadings is to 'deter repetition of the conduct or comparable conduct by others similarly situated.'" *Mobley*, 506 S.W.3d at 95 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(b)). "We construe the phrase 'improper purpose' as the equivalent of 'bad faith' under Rule 13." *Id.* (quoting *Dike*, 343 S.W.3d at 183–84).

"[I]mposition of sanctions is just" when (1) there is a "direct relationship . . . between the offensive conduct and the sanction imposed" and (2) the sanctions are not excessive, i.e., "[t]he punishment . . . fit[s] the crime." *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). "In determining whether sanctions are appropriate, the trial court must

21

examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading." *Dike*, 343 S.W.3d at 184. "Courts should presume parties and their counsel file all papers in good faith, and the party seeking sanctions must overcome that presumption." *Id.* (citing TEX. R. CIV. P. 13; *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993)). "The party seeking sanctions has the burden of showing its right to relief." *Id.*

## IV. Dismissing the Coxes' Claims with Prejudice Was Not an Abuse of Discretion

### A. The Trial Court Did Not Abuse Its Discretion by Finding that the Nonsuit Was Taken for An Improper Purpose

The Coxes argue that the trial court erred in determining that the nonsuit was filed for an improper purpose because they had an absolute and unqualified right to nonsuit their claims. Pursuant to Rule 162 of the Texas Rules of Civil Procedure, a plaintiff may take a nonsuit "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence." TEX. R. CIV. P. 162. Courts "have described this right as unqualified and absolute." *Liles v. Contreras*, 547 S.W.3d 280, 295 (Tex. App.—San Antonio 2018, pets. denied) (citing *Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008); *Vick v. Floresville Indep. Sch. Dist.*, 505 S.W.3d 24, 31 (Tex. App.—San Antonio 2016, pet. denied); *Genesis Producing Co., L.P. v. Smith Big Oil Corp.*, 454 S.W.3d 655, 659 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). "This right is important and firmly rooted in Texas jurisprudence." *Id.* at 295–96 (citing *Aetna Cas. & Sur. Co. v. Specia*, 849 S.W.2d 805, 806 (Tex. 1993) (orig. proceeding)). "However, even the filing of a nonsuit is subject to sanctions." *Id.* at 296; *see Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) ("After a nonsuit, a trial court retains jurisdiction to address collateral matters, such as motions for sanctions.").

Next, the Coxes argue that the trial court abused its discretion in considering Premier and Cedar Creek to be prevailing parties under *Epps v. Fowler* because that case determined whether a party was the prevailing party under a contract for the purpose of awarding attorney fees, whereas this case involves a trial court's imposition of sanctions dismissing a case with prejudice. *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). In *Epps*, the plaintiff homeowners sued the previous owners for violations of the Deceptive Trade Practices Act, alleging they failed to disclose foundation issues with the home. *Id.* at 864–65. The defendants "denied having knowledge of any defects in the foundation," "sought their attorney's fees as sanctions under Chapter 10 of the Civil Practice and Remedies Code," and "[a]lternatively . . . sought attorney's fees under section 17 of the earnest money contract signed by the parties" that provided for "[t]he prevailing party in any legal proceeding related to the contract . . . to recover reasonable attorney's fees" and court costs. *Id.* at 865. After failing "to respond to discovery, including . . . requests for admissions," and after being served with a motion for partial summary judgment, the plaintiffs nonsuited their case without prejudice. *Id.*

The Texas Supreme Court noted that it had previously "held that a plaintiff who obtained favorable jury findings but no damages was not entitled to attorney's fees under contractual language entitling a prevailing party to such fees" and then noted, "Today, we consider whether a defendant is a prevailing party entitled to attorney's fees when the plaintiff nonsuits a claim without prejudice." *Id.* at 864 (citing *Intercontinental Grp. P'ship v. KB Home Lone Star LP*, 295 S.W.3d 650, 652 (Tex. 2009)). The Texas Supreme Court concluded that "such a defendant is not a prevailing party unless the court determines, on the defendant's motion, that the plaintiff

23

took the nonsuit in order to avoid an unfavorable judgment." *Id.* The Texas Supreme Court then addressed certain factors relevant to making that determination:

> A number of factors may support an inference that a plaintiff has nonsuited in order to avoid an unfavorable ruling. For example, . . . if a plaintiff nonsuits only after a motion for summary judgment is filed, it may suggest that the plaintiff elected to do so in order to escape summary judgment. . . . Similarly, a failure to timely identify experts or other critical witnesses could suggest that a nonsuit is neither tactical nor voluntary. And the existence of other procedural obstacles, such as the plaintiff's inability to join necessary parties, may also signal that the defendant has prevailed over the plaintiff. On the other hand, as we have noted, it is reasonable to presume that the parties did not intend to encourage continued litigation when discovery reveals previously unknown flaws in the plaintiff's claims.

*Id.* at 870–71 (citations omitted).[6]

We agree with the Coxes that *Epps* involved the issue of attorney fees, whereas this case involves dismissal of a case with prejudice as a sanction under Chapter 10. Even so, in both instances, the trial court's order turns on whether the nonsuit was taken to avoid an unfavorable ruling. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(1); *Liles*, 547 S.W.3d at 296. Accordingly, the Supreme Court's reasoning in *Epps* comports with the conclusion that a nonsuit taken to avoid an unfavorable ruling on the merits can be considered filed for an improper purpose under Chapter 10, and several courts have looked to this language in determining the propriety of Chapter 10 sanctions following a nonsuit. *See Sanchez v. Fiedler*, No. 03-14-00182-CV, 2016 WL 4272111, at *6 (Tex. App.—Austin Aug. 11, 2016, pet. denied) (mem. op.); *Liles*, 547 S.W.3d at 296.

---

[6]This language was based on prior Texas Supreme Court opinions concluding that a plaintiff cannot use the procedural vehicle of nonsuiting a case to avoid unfavorable rulings. *In re Team Rocket*, 256 S.W.3d 257, 259–60 (Tex. 2008) (orig. proceeding) (finding that a nonsuit after an unfavorable venue ruling is improper).

"Texas cases have recognized that a trial court may rely on circumstantial evidence and may take judicial notice of its case file in determining that pleadings were filed with an improper motive." *Sanchez*, 2016 WL 4272111, at *5. Here, after considering its file, the trial court determined that the nonsuit was taken for an improper purpose. The trial court carefully considered the procedural history, the arguments of counsel, and the applicable law in reaching its decision. Specifically, the trial court noted that (1) Cedar Creek had previously been nonsuited, and was later added as a party after the Coxes filed untimely petitions without leave of court; (2) the Coxes nonsuited Premier and Cedar Creek during the hearing on their joint motion for summary judgment after the trial court granted their motions to strike the opinions in Corporal Miller's accident report, sustained objections to the Coxes' summary judgment evidence, and announced that it thought it had granted the motion to strike the late-filed petitions; (3) the Coxes re-filed the lawsuit by filing a new petition that had the same claims as the eleventh amended petition that was struck as untimely; (4) the Coxes' counsel filed an affidavit based on the unsubstantiated claim that Deal's testimony about Cedar Creek's involvement contained new information justifying bringing Cedar Creek back into the lawsuit after it had been nonsuited; and (5) the trial court was likely to grant Cedar Creek's motion for summary judgment. As a result, the trial court concluded that the nonsuit was filed in bad faith to avoid unfavorable rulings on the merits.

Most significantly, the Coxes' counsel admitted that the case was nonsuited to specifically avoid the trial court's decision to strike the tenth and eleventh amended petitions,

25

which were the only petitions that would have brought Cedar Creek back into the lawsuit.[7] Thus, the trial court's conclusion that the Coxes nonsuited their case because it was likely to grant summary judgment in favor of Cedar Creek was firmly supported by the evidence. *See In re Team Rocket*, 256 S.W.3d at 260 ("a decision on the merits cannot be circumvented by nonsuiting and refiling the case").

The struck petitions also added new theories of negligence against Premier. The timing of the nonsuit, which occurred (1) in the middle of argument on Premier's and Cedar Creek's jointly filed, no-evidence and traditional motions for summary judgment, (2) after the trial court granted their motions to exclude opinions from Corporal Miller's accident report, (3) after the trial court sustained defendants' objections to the Coxes' summary judgment evidence, and (4) after it had quashed the Coxes' attempt to depose Cedar Creek's corporate representative, also supports the finding of a decision to avoid the merits. Even though the Coxes had conducted extensive discovery and were less than forty-five days before trial, they nonsuited their case and refiled it in the same court so that they could raise new claims of negligence that, unlike prior claims, were not based on holding Premier and Cedar Creek responsible for Vanderburg's actions. Those new claims against both parties were filed well after the pleading and discovery deadlines in the original case had expired. Contrary to the Coxes' argument, the evidence supported the trial court's conclusion that the additions in the struck pleadings were not

_____

[7]The Coxes complain that there was no written order striking the petitions at the time of the nonsuit. However, the affidavit of their counsel states, "Shortly after the Court informed the parties that it had granted the motion to strike and that the case would be continued, I announced to the Court that Plaintiffs were non-suiting all claims . . . ." Because the record shows that counsel believed that the trial court would strike the late-filed petitions before the nonsuit, we find that a written order striking the petitions was not a prerequisite to the finding that the nonsuit was taken for an improper purpose.

based on any newly discovered evidence because the Coxes were aware of all relevant facts of the case, including Premier's and Cedar Creek's involvement, before the discovery deadline. Because the new lawsuit would restart the clock and would provide for additional discovery on new claims even though several continuances had been granted in this case, the trial court could also find that the new lawsuit was filed to harass or to cause unnecessary delay or needless increase in the cost of litigation.

As a result, we find no abuse of discretion in the trial court's finding that Premier and Cedar Creek met their burden of showing that the nonsuit was taken for an improper purpose. Thus, the decision to award sanctions was proper.

### B.    Justness of the Sanctions

Next, we determine whether the sanction of dismissal with prejudice was just. "[I]mposition of sanctions is just" when (1) there is a "direct relationship . . . between the offensive conduct and the sanction imposed" and (2) the sanctions are not excessive, i.e., "[t]he punishment . . . fit[s] the crime." *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917.

The Coxes do not assert the lack of a direct relationship between the improper conduct and the sanctions imposed.  The offensive conduct was the taking of a nonsuit to avoid unfavorable rulings, including the trial court's pleading deadline and the impending summary judgment ruling against the Coxes.  Since the sanction of deeming the nonsuit to be with prejudice bore a direct relationship to the offensive conduct, and the Coxes fail to argue otherwise, we find that the first factor in determining if the sanction was just has been met.

27

Moreover, Premier's and Cedar Creek's motions for sanctions provided alternatives to a dismissal of the lawsuit with prejudice, including monetary sanctions. The trial court's order recited that it considered lesser sanctions but rejected them after "Plaintiffs' counsel argued against the imposition of any conditions on the second suit." As a result, based on the record, the trial court determined that dismissal with prejudice was the only means to prevent the Coxes from "avoiding a decision on the merits and circumventing a prior Order." Those findings were not specifically challenged below.

For the first time on appeal, the Coxes argue that the trial court should have considered and imposed lesser sanctions. Because the Coxes did not raise their complaint to the trial court, this issue is unpreserved. *See* TEX. R. APP. P. 33.1; *Sanchez*, 2016 WL 4272111, at *9 (citing *Werley v. Cannon*, 344 S.W.3d 527, 535 (Tex. App.—El Paso 2011, no pet.)) (finding that preservation of error in the trial court is a prerequisite for presenting a complaint about the consideration of lesser sanctions on appeal); *see also Akhtar v. Leawood HOA, Inc.*, 525 S.W.3d 814, 820–21 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Approximately $5,602.00 v. State*, No. 14-08-00359-CV, 2009 WL 1886127, at *1 (Tex. App.—Houston [14th Dist.] July 2, 2009, no pet.) (mem. op.)) ("holding complaint that trial court abused its discretion by imposing death penalty sanctions was not preserved for appellate review where issue on appeal did not comport with those presented in motion for new trial").[8]

---

[8]The Coxes argued in their response to the motions for sanctions that the record did not show egregious enough conduct to warrant entry of death penalty sanctions because no sanctions of any kind were warranted. The motion did not argue that death penalty sanctions would be excessive if the trial court found sanctionable conduct, and none of the Coxes' filings with the trial court discussed the imposition of lesser sanctions. As previously discussed, the trial court's findings of bad faith and the conclusion that the nonsuit was taken to circumvent unfavorable rulings were not abuses of discretion.

We find that the Coxes waived their complaint that lesser sanctions were available. In light of our other conclusions, we find that the trial court did not abuse its discretion by dismissing the Coxes' claims with prejudice. As a result, we overrule the Coxes' point of error relating to the sanction of dismissal with prejudice.

**V.     The Trial Court Did Not Err by Declaring Premier and Cedar Creek Prevailing Parties**

Because we have found the sanction of dismissal with prejudice was proper under Chapter 10, we next discuss whether the trial court properly found that Premier and Cedar Creek were prevailing parties. The Texas Supreme Court held "that a defendant may be a prevailing party when a plaintiff nonsuits without prejudice if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits." *Epps*, 351 S.W.3d at 870.

Because this case did not involve the question of who prevailed under a contract, the Coxes argue that the *Epps* rule does not apply. Yet, the parties' contract in *Epps* did not define the term "prevailing party," leading to the analysis of the term based on its plain, generally accepted meaning. *Id.* at 866. Here, Premier and Cedar Creek were declared prevailing parties under Chapter 10, which states, "The court may award to a prevailing party on a motion under this section . . . all costs for inconvenience, harassment, and out of pocket expenses incurred or caused by the subject litigation." TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(c). Because both *Epps* and Chapter 10 involve the issue of identifying a prevailing party after a nonsuit, we find *Epps* applicable to our analysis here.

29

In *Epps*, the Texas Supreme Court wrote, "[W]e have no doubt that a defendant who is the beneficiary of a nonsuit with prejudice would be a prevailing party." *Epps*, 351 S.W.3d at 868. "The res judicata effect of a nonsuit with prejudice works a permanent, inalterable change in the parties' legal relationship to the defendant's benefit: the defendant can never again be sued by the plaintiff or its privies for claims arising out of the same subject matter. *Id.* at 868–69. Here, because the trial court granted Premier's and Cedar Creek's sanctions motion after finding that the Coxes' nonsuit was taken to avoid an unfavorable ruling on the merits, the determination that Premier and Cedar Creek were prevailing parties was proper.[9]

## VI. Conclusion

We affirm the trial court's dismissal of the Coxes' claims with prejudice.

Ralph K. Burgess
Justice

Date Submitted: July 28, 2021
Date Decided: September 7, 2021

---

[9]In companion cause number 06-21-00015-CV, we discuss the res judicata effect of the ruling on the Coxes' new lawsuit.